

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  HEATHER BUSHMAN
   Supervising Deputy Attorney General
5  KIM AARONS, State Bar No. 213480
   Deputy Attorney General
6   110 West A Street, Suite 1100
    San Diego, CA 92101
7   P.O. Box 85266
    San Diego, CA 92186-5266
8   Telephone: (619) 525-4398
    Fax: (619) 645-2581
9   Email: Kim.Aarons@doj.ca.gov

10 Attorneys for Respondent

11

12          IN THE UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14

15 **DARRYL RANSOM,**                    07-CV-04453-PSG (JCR)

16                        Petitioner,    **ANSWER TO PETITION FOR
                                         WRIT OF HABEAS CORPUS;
17          v.                           SUPPORTING
                                         MEMORANDUM OF POINTS
18 **BEN CURRY, WARDEN,**                AND AUTHORITIES**

19                        Respondent.
                                         Judge: The Honorable
20                                              John Charles Rayburn, Jr.

21

22          Respondent Ben Curry, Warden of the Correctional Training Facility at

23 Soledad, California, answers the Petition for Writ of Habeas Corpus filed by inmate

24 Darryl Ransom, and admits, denies, and alleges the following:

25          1.   Petitioner is lawfully in the custody of the California Department of

26 Corrections and Rehabilitation serving a life sentence following a guilty plea in

27 ///

28 ///

1

15

1   the Los Angeles County Superior Court for second degree murder, in violation of

2   California Penal Code section 187. (Lodg. 1[1/] - Abstract of J; Lodg. 2 - Information.)

3       2.    Petitioner does not challenge the propriety of his conviction, but instead

4   seeks relief from the California Board of Parole Hearings' (Board) 2005 decision

5   finding him unsuitable for parole. (Lodg. 3 - 2005 Parole Consideration Hr'g Tr.)

6   Petitioner contends that the Board abused its discretion and violated his due process

7   rights because: 1) the Board failed to state any evidence of his current risk to public

8   safety, 2) the Board impermissibly based its decision on unchanging factors such as

9   the commitment offense, 3) there was no evidence to support the Board's finding that

10  the commitment offense was especially heinous, atrocious, or cruel, 4) the Board

11  ignored the positive factors demonstrating Petitioner's suitability for parole, and 5)

12  Petitioner did not receive the benefit of his bargain under his plea agreement, i.e., a

13  lesser punishment. (Pet. at 5-6, attach. at 5(A)-6(B).)

14      3.    On September 28, 2005, Petitioner appeared before the Board for a

15  subsequent parole consideration hearing. (Lodg. 3.) At the conclusion of the hearing,

16  the Board found Petitioner unsuitable for release on parole because he would pose an

17  unreasonable risk of danger to society or threat to public safety if released from

18  prison. (*Id.* at 91.)

19      4.    The Board's decision was based, in part, on the facts and circumstances

20  of Petitioner's commitment offense, which the Board found was committed in an

21  especially cruel and callous manner because Petitioner shot the victim in the heart

22  with a .357-magnum handgun. (Lodg. 3 at 91-92.) The Board further found that the

23  motive for the crime, a drug debt, was very trivial in relation to the offense. (*Id.*) The

24  Board also found that the crime was carried out in a dispassionate manner and

25  demonstrated a callous disregard for human suffering because of the way the victim

26  was killed, and because the victim was thirty-three years old when he died. (*Id.*)

27

28      1.   Respondent's Notice of Lodging is being filed concurrently with this
Answer.

5. The Board's decision was also based on Petitioner's criminal history. Specifically, Petitioner was convicted of murder and committed to the California Youth Authority when he was a juvenile. And he suffered another conviction as an adult for preventing and dissuading a witness from testifying. (Lodg. 3 at 92-93.) In addition, Petitioner was charged with, but not convicted of, several crimes including vehicle theft, attempted murder, possession of narcotics, and possession of stolen property. (*Id.* at 93.) The Board also noted that Petitioner was on probation at the time of the instant offense. Based on this history, the Board found that Petitioner had a record of violence and assaultive behavior, and a pattern of escalating criminal conduct. The Board further concluded that Petitioner had failed at previous grants of probation, and had failed to profit from society's attempts to correct his criminality. (*Id.* at 91.)

6. The Board's decision was additionally based on Petitioner's unstable social history because of his involvement in gang activity and narcotics dealing. (Lodg. 3 at 93.) The Board also relied on a psychologist's evaluation of Petitioner finding that Petitioner had an anti-social personality disorder. The Board further based its decision on Petitioner's post-commitment history, finding that Petitioner had not adequately participated in prison programs while incarcerated, and that he had incurred a disciplinary violation. (*Id.*)

7. The Board further found that there were several positive factors in support of Petitioner's release on parole. These factors included Petitioner's participation in Alcoholics Anonymous and college courses. (Lodg. 3 at 94.) The Board found, however, that these factors did not sufficiently outweigh the negative factors because Petitioner's progress in these areas was recent, and Petitioner had yet to demonstrate progress over an extended period of time. (*Id.*)

8. Petitioner challenged the Board's decision by filing a petition for writ of habeas corpus in the Los Angeles County Superior Court, in which he alleged the same claims as those alleged in the instant Petition. (Lodg. 4 - Los Angeles County

1  Superior Ct. Pet.)  The superior court denied the petition in a reasoned decision,

2  finding that there was some evidence in the record to support the Board's findings.

3  (Lodg. 5 - Los Angeles County Superior Ct. Order.)

4       9.    Petitioner next filed a petition for writ of habeas corpus in the California

5  Court of Appeal, again alleging the same claims as in the instant federal Petition.

6  (Lodg. 6 - California Ct. of Appeal Pet.)  The Court of Appeal summarily denied the

7  petition without analysis or citation of authority.  (Lodg. 7 - California Ct. of Appeal

8  Order.)

9       10.  Petitioner subsequently filed a petition for review in the California

10  Supreme Court, again alleging the same claims as in the instant Petition.  (Lodg. 8 -

11  California Supreme Ct. Pet.)  The California Supreme Court summarily denied the

12  petition without analysis or citation to authority.  (Lodg. 9 - California Supreme Ct.

13  Order.)

14       11.  Respondent denies that Petitioner has demonstrated that his claims

15  regarding his 2005 parole proceedings warrant federal review or relief.  Respondent

16  specifically denies that Petitioner has alleged or shown that the state court decisions

17  were contrary to, or an unreasonable application of, clearly established federal law,

18  or involved an unreasonable interpretation of the facts in his case.

19       12.  Assuming that Petitioner has a federally protected liberty interest in

20  parole,[2] Respondent denies that Petitioner's due process rights were violated at his

21  2005 parole consideration hearing.  Respondent submits that Petitioner received all

22  of the process to which he was entitled because, under clearly established federal law,

23  due process requires only that the Board provide him with an opportunity to be heard

24  and a statement of reasons for the decision.  *Greenholtz v. Inmates of Nebraska Penal*

25  _____

26       2.  Respondent denies that California inmates have a liberty interest in parole,

27  but acknowledges that the Ninth Circuit held otherwise in *Sass v. Cal. Bd. of Prison*

28  *Terms*, 461 F.3d 1123 (9th Cir. 2006).  Respondent nevertheless preserves the liberty
   interest argument pending possible future review.

4

1 *and Correctional Complex*, 442 U.S. 1, 16, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979).

2 Petitioner is not entitled to more process than provided for under *Greenholtz* and he

3 does not contend that he failed to receive the protections set forth in *Greenholtz*.

4      13.   Respondent denies that the Board abused its discretion or violated due

5 process by relying on unchanging factors such as Petitioner's commitment offense

6 and criminal history in support of its decision to deny parole, and further denies that

7 the Board relied solely on unchanging factors in denying parole.  Respondent also

8 submits that there is no clearly established United States Supreme Court authority

9 precluding the Board from relying on unchanging factors in denying parole, and there

10 is no clearly established United States Supreme Court authority requiring courts to

11 apply the some-evidence standard of judicial review in scrutinizing the merits of a

12 parole decision in order to preserve due process.

13      14.   Even assuming that the some-evidence standard applies, Respondent

14 denies that the Board's decision was unsupported by any evidence or that his due

15 process rights were violated.  Respondent further denies that federal courts must rely

16 on state law in determining whether a federal due process violation has occurred

17 because California law necessarily affords inmates a higher level of process than that

18 required under federal law.

19      15. Respondent denies that Petitioner failed to received the benefit of his plea

20 bargain, or that the Board's decision affected the length of his term.  In exchange for

21 his guilty plea, Petitioner received a reduced charge, as well as the dismissal of

22 special allegations, one of which imposed a punishment of death or life without

23 parole. (Lodg. 1; Lodg. 2.)  Consequently, Petitioner bargained for and received

24 eligibility for parole after serving a minimum term -- not a shorter sentence.

25      16.   Respondent denies that an evidentiary hearing is appropriate or necessary

26 in this case because Petitioner's claims can be resolved based on the existing state

27 court record. *See Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999).

28 ///

1     17. Except as expressly admitted in this Answer, Respondent denies the

2 allegations of the Petition.

3     For the reasons stated in this Answer and Memorandum of Points and

4 Authorities, the Court should deny the Petition.

5     Dated: December 13, 2007

6                          Respectfully submitted,

7          EDMUND G. BROWN JR.
           Attorney General of the State of California

8          DANE R. GILLETTE
           Chief Assistant Attorney General
9
           JULIE L. GARLAND
           Senior Assistant Attorney General
10
           HEATHER BUSHMAN
11         Supervising Deputy Attorney General

12

13

14         KIM AARONS
           Deputy Attorney General
15         Attorneys for Respondent

16 KA:fpt
   70108520.wpd
17 SD2007700801

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

INTRODUCTION                                                                     7

ARGUMENT                                                                         9

I.  THE STATE COURT DECISIONS REJECTING
    PETITIONER'S DUE PROCESS CLAIMS WERE NEITHER
    CONTRARY TO, NOR AN UNREASONABLE APPLICATION
    OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR WERE
    THEY BASED UPON AN UNREASONABLE
    DETERMINATION OF THE FACTS.                                                  9

    a.  The AEDPA Permits Relief To State Inmates Only For Violations
        Of Clearly Established Federal Law.                                      9

    b.  The Board's Decision Complied With Federal Due Process
        Because Petitioner Received An Opportunity To Be Heard
        And a Statement of Reasons For The Denial of Parole.                    10

    c.  No Supreme Court Holding Clearly Established That Courts Must
        Scrutinize The Merits of a Parole Decision Under The Some-
        Evidence Standard in Order to Preserve Due Process.                     11

    d.  The Supreme Court Effectively Overruled Ninth Circuit
        Precedent That Applied The Some-Evidence Test as Clearly
        Established Federal Law.                                                12

    e.  Even Assuming That The Some-Evidence Test Applies
        to State Parole Decisions, The State Court Decisions
        Properly Found That There Was Some Evidence to
        Support The Board's Decision.                                           15

    f.  There is no Clearly Established Federal Law Precluding
        Reliance On Unchanging Factors Such as The Commitment
        Offense.                                                                20

II. THE BOARD'S 2005 DECISION DENYING PAROLE DID
    NOT VIOLATE PETITIONER'S PLEA AGREEMENT
    BECAUSE PETITIONER RECEIVED THE BENEFIT OF
    HIS BARGAIN.                                                                21

CONCLUSION                                                                      24

i

1
2

# TABLE OF AUTHORITIES

**Page**

3 **Cases**

4

5 *Biggs v. Terhune*
334 F.3d 910 (9th Cir. 2003)                                    13, 20, 21

6 *Bridges v. California*
314 U.S. 252 (1941)                                                    19
7

8 *Brown v. Poole*
337 F.3d 1155 (9th Cir. 2003)                                          22

9 *California v. Greenwood*
486 U.S. 35
10 108 S. Ct. 1625
100 L. Ed. 2d 30 (1988)                                                18
11

12 *California v. Ramos*
463 U.S. 992 (1983)                                                    18

13 *Carey v. Musladin*
___ U.S. ___
14 127 S. Ct. 649
166 L. Ed. 2d 482 (2006)                                     9, 10, 12-15
15

16 *Crater v. Galaza*
___ F.3d ___
2007 WL 1965122 (9th Cir. July 9, 2007)                                10
17

18 *Cruzan v. Director, Missouri Dept. of Health*
497 U.S. 261 (1990)                                                18, 19

19 *Early v. Packer*
537 U.S. 3
20 123 S. Ct. 362
154 L. Ed. 2d 263 (2002)                                                9
21

22 *Gagnon v. Scarpelli*
411 U.S. 778
93 S.Ct. 1756 (1973)                                                   11
23

24 *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*
442 U.S. 1
99 S. Ct. 2100
25 60 L. Ed. 2d 668 (1979)                                     10-12, 14, 15

26 *In re Dannenberg*
34 Cal. 4th 1061 (2005)                                                23
27

28 *In re Hyde*
154 Cal.App.4th 1200 (2007)                                            16

## TABLE OF AUTHORITIES  (continued)

|  | Page |
|---|---|
| *In re Jacobson*<br>154 Cal.App.4th 849 (2007) | 16 |
| *In re Rosenkrantz*<br>29 Cal. 4th 658 (2002) | 16, 17, 19 |
| *In re Scott*<br>133 Cal. App. 4th 573 (2005) | 16 |
| *In re Smith*<br>114 Cal.App.4th 343 (2003) | 16 |
| *Irons v. Carey*<br>505 F.3d 846 (9th Cir. 2007) | 14, 15, 21 |
| *Irons v. Carey*<br>506 F.3d 951 (9th Cir. 2007) | 14 |
| *Knowles v. Mirzayance*<br>127 S. Ct. 1247<br>167 L. Ed. 2d 57 (2007) | 15 |
| *Landreth v. C.I.R.*<br>859 F.2d 643 (9th Cir. 1988) | 14 |
| *Lockyer v. Andrade*<br>538 U.S. 63<br>123 S. Ct. 1166<br>155 L. Ed. 2d 144 (2003) | 9 |
| *Miller v. Gammie*<br>335 F.3d 889 (9th Cir. 2003) | 12-14 |
| *Mirzayance v. Knowles*<br>175 Fed. Appx. 14 (9th Cir. 2006) | 15 |
| *Moran v. Burbine*<br>475 U.S. 412 (1986) | 18 |
| *Morrissey v. Brewer*<br>408 U.S. 471<br>92 S.Ct. 2593 (1972) | 11 |
| *Patrick v. Smith*<br>127 S. Ct. 2126<br>167 L. Ed. 2d 861 (2007) | 15 |
| *Pedro v. Oregon Parole Bd.*<br>825 F.2d 1396 (9th Cir. 1987) | 10 |

## TABLE OF AUTHORITIES  (continued)

**Page**

*Santobello v. New York*
404 U.S. 257
92 S. Ct. 495
30 L. Ed. 2d 427 (1971)                                          22, 23

*Sass v. Cal. Bd. of Prison Terms*
461 F.3d 1123 (9th Cir. 2006)                                    13, 14

*Schriro v. Landrigan*
___ U.S. ___
127 S. Ct. 1933
167 L. Ed. 2d 836 (2007)                                         15

*Smith v. Mitchell*
437 F.3d 884 (9th Cir. 2006)                                     15

*Superintendent v. Hill*
472 U.S. 445
105 S. Ct. 2768
86 L. Ed. 2d 356 (1985)                        13-15, 17, 18, 20, 24

*Williams v. Taylor*
529 U.S. 362
120 S. Ct. 1495
146 L. Ed. 2d 389 (2000)                                         10, 21

*Wolff v. McDonnell*
418 U.S. 539
94 S.Ct. 2963 (1974)                                             11

*Woodford v. Viscotti*
537 U.S. 19
123 S. Ct. 357
154 L. Ed. 2d 279 (2002)                                         9

*Ylst v. Nunnemaker*
501 U.S. 797
111 S. Ct. 2590
115 L. Ed. 2d 706 (1991)                                         19


**Statutes**


28 United States Code
     § 2254(d)                                                   9, 12
     § 2254(d)(1)                                                21

# TABLE OF AUTHORITIES  (continued)

**Page**

California Code of Regulations, Title 15
§ 2401                                                            17
§ 2401(b)                                                    17, 18
§ 2401(c)(1)(D)                                                   18
§ 2402(c)(2)                                                      19
§ 2401(c)(2)-(6)                                                  18
§ 2402(c)(3)                                                      19
§ 2402(d)(2)                                                      19
§ 2402(d)(9)                                                      20


Penal Code
§ 187                                                              7
§ 12022.5                                                      7, 22
§ 190.2(a)(17)                                                 7, 22
§ 3041                                                            23
§ 3041(a)-(b)                                                     17

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On June 1, 1983, Petitioner fatally shot Arthur Chappell at Chappell's apartment in Los Angeles. Petitioner entered the residence to settle a drug debt[3/] while Chappell was asleep. While Petitioner was attempting to retrieve drugs from Chappell's refrigerator, Chappell woke up. Petitioner then shot the victim through the heart with a .357-magnum handgun loaded with .38-caliber bullets, and left the residence. Before Chappell's body was discovered, Petitioner returned with his crime partner, Marcus Walton, to steal the victim's stereo equipment. (Lodg. 2 at 12.)

Petitioner was later arrested and charged with first degree murder, in violation of California Penal Code § 187, with a penalty of either death or life imprisonment without parole according to California Penal Code § 190.2(a)(17) for the special circumstances of murder during the commission of a robbery. Petitioner was additionally charged with a firearm use enhancement pursuant to California Penal Code § 12022.5. (Lodg. 2.)

Petitioner subsequently entered a plea agreement and pled guilty to the lesser offense of second degree murder. In exchange for his plea, the special circumstances allegation and firearm use enhancement were each dismissed. Petitioner was then sentenced to fifteen years to life in state prison. (Lodgs. 1, 2, 10.)

This Petition concerns Petitioner's October 2005 parole consideration hearing, which resulted in the Board concluding that Petitioner was unsuitable for release on parole because he would pose an unreasonable risk of danger to public safety. (Lodg. 2.) Petitioner contends that the Board's decision violated his due process rights

---

3. According to the probation officer's report and a report prepared by the Sheriff's Department, Petitioner was in the process of burglarizing the victim's residence at the time of the shooting. At his parole hearing, Petitioner elaborated, stating that he went to the victim's residence "to settle a difference" and "to retrieve my dope[.]" (Lodg. 2 at 12.)

1  because: 1) the Board failed to state any evidence of his current risk to public safety;
2  2) the Board impermissibly based its decision on unchanging factors such as the
3  commitment offense; 3) there was no evidence to support the Board's finding that the
4  commitment offense was especially heinous, atrocious, or cruel; 4) the Board ignored
5  the positive factors demonstrating Petitioner's suitability for parole, and 5) Petitioner
6  did not receive the benefit of his bargain under his plea agreement, i.e., a lesser
7  punishment. (Pet. at 5-6, attach. at 5(A)-6(B).)

8     Respondent submits that state court decisions rejecting these claims were
9  neither contrary to, nor an unreasonable application of, controlling United States
10 Supreme Court authority. Petitioner was provided with all of the due process that he
11 was entitled to at his 2005 parole consideration hearing, which included receiving
12 sufficient notice of the hearing, having a reasonable opportunity to be heard before
13 the Board, and receiving both oral and written statements detailing the reasons for the
14 Board's decision. To the extent that Petitioner alleges that he is entitled to additional
15 due process protections, there is no controlling Supreme Court authority providing
16 for such protections in parole consideration hearings.

17    In addition, even assuming that the some-evidence standard of judicial review
18 applies, there is no controlling federal law precluding the Board from relying on
19 unchanging factors, such as Petitioner's commitment offense, in denying parole.
20 Furthermore, Petitioner's reliance on state law is misplaced because California law
21 affords inmates greater procedural protections than controlling federal law.

22    Finally, the Board's decision did not violate Petitioner's plea agreement.
23 Petitioner received the benefit of his bargain, which was a reduced charge of second-
24 degree murder, and the dismissal of special allegations. Thus, this Court must deny
25 the Petition.

26 ///
27 ///
28 ///

8

1

**ARGUMENT**

2

**I.**

3

4

5

**THE STATE COURT DECISIONS REJECTING PETITIONER'S DUE PROCESS CLAIMS WERE NEITHER CONTRARY TO, NOR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR WERE THEY BASED UPON AN UNREASONABLE DETERMINATION OF THE FACTS.**

6

7

**a.    The AEDPA Permits Relief To State Inmates Only For Violations Of Clearly Established Federal Law.**

8    The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) restrains

9    judicial authority to grant relief to a state prisoner. *See* 28 U.S.C. § 2254(d).  On a

10    claim adjudicated on the merits by a state court, federal habeas corpus relief may not

11    be granted unless the state court's adjudication: "(1) resulted in a decision that was

12    contrary to, or involved an unreasonable application of, clearly established Federal

13    law, as determined by the Supreme Court of the United States; or (2) resulted in a

14    decision that was based on an unreasonable determination of the facts in light of the

15    evidence presented in the State court proceeding." *Id.*

16    The AEDPA affords a "highly deferential standard for evaluating state-court

17    rulings, which demands that state-court decisions be given the benefit of the doubt."

18    *Woodford v. Viscotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002)

19    (quotations omitted).  However, the state courts need not cite to, or even be aware of,

20    the governing Supreme Court case law. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct.

21    362, 154 L. Ed. 2d 263 (2002).  The state court adjudications merit deference "so long

22    as neither the reasoning nor the result of the state-court decision contradicts [clearly

23    established federal law]." *Id.*

24    As a threshold matter, the Court must decide what, if any, "clearly established

25    Federal law" applies. *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L.

26    Ed. 2d 144 (2003).  In making this determination, the Court may look only to the

27    holdings of the United States Supreme Court governing at the time of the state court's

28    adjudication. *Carey v. Musladin*, ___ U.S. ___, 127 S. Ct. 649, 653, 166 L. Ed. 2d

1    482 (2006) (*quoting Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d

2    389 (2000)).  Where there is an open question in Supreme Court jurisprudence, the

3    AEDPA precludes relief. *Crater v. Galaza*, __ F.3d __, 2007 WL 1965122 (9th Cir.

4    July 9, 2007), *citing Musladin* at 654.

        **b.    The Board's Decision Complied With Federal Due Process**

5                    **Because Petitioner Received An Opportunity To Be Heard**

6                    **And a Statement of Reasons For The Denial of Parole.**

7        The setting of a parole release date is not part of a criminal prosecution, so "the

8    full panoply of rights due a defendant in such a proceeding is not constitutionally

9    mandated, even when a protected liberty interest exists." *Pedro v. Oregon Parole*

10   *Bd.*, 825 F.2d 1396, 1399 (9th Cir. 1987).  Under the only United States Supreme

11   Court holding addressing the process due in the state parole context, due process is

12   satisfied where state parole procedures afford: (1) an opportunity to be heard; and (2)

13   a statement of reasons for the denial of parole. *Greenholtz*, 442 U.S. at 16.

14           Here, the Board complied with the due process standards as outlined by the

15   Supreme Court in *Greenholtz*, and Petitioner does not claim otherwise.  Instead, he

16   argues that due process guarantees certain rights beyond those set forth in *Greenholtz*.

17   However, the Supreme Court was clear that "[t]he Constitution does not require

18   more." *Greenholtz*, 442 U.S. at 16.  Petitioner presents no Supreme Court law that

19   clearly establishes the broadening of due process as to parole matters.  Without a

20   Supreme Court holding supporting his due process claims, the district court properly

21   denied relief under AEDPA. *See Musladin*, 127 S. Ct. at 654 ("No holding of this

22   Court required the California Court of Appeal to apply the test . . . to the spectators'

23   conduct here.  Therefore, the state court's decision was not contrary to or an

24   unreasonable application of clearly established federal law.").

25   ///

26   ///

27   ///

28   ///

1        **c.**     **No Supreme Court Holding Clearly Established That Courts**
                   **Must Scrutinize The Merits of a Parole Decision Under The**
2                    **Some-Evidence Standard in Order to Preserve Due Process.**

3       Petitioner claims the Board deprived him of due process by denying parole

4 based solely upon unchanging factors such as his commitment offense. He also

5 claims that there was no evidence that he poses a current risk to public safety, or that

6 his crime was especially heinous, atrocious, or cruel. Finally, he alleges that the

7 Board ignored positive factors demonstrating his suitability for parole. (Pet. at 5-6,

8 Attach. at 5(A)-6(B).) Respondent submits that these claims seek due process

9 protections beyond those clearly established by the Supreme Court because there is

10 no federal law precluding the Board's reliance on the commitment offense, and courts

11 are not permitted to scrutinize or reweigh the evidence.

12       First, the Supreme Court has never held that some evidence must support a

13 parole decision, or that federal courts must ensure that a parole decision is consistent

14 with state regulations. On the contrary, the Supreme Court acknowledged the

15 necessarily subjective and predictive nature of the parole authority's discretionary

16 authority, and distinguished parole decisions from adversarial proceedings.

17 *Greenholtz*, 442 U.S. at 13-14. The law safeguarding procedures in adversarial

18 proceedings are inapplicable to parole hearings. *Id*. at 14 ("Procedures designed to

19 elicit specific facts, such as those required in *Morrissey, Gagnon,* and *Wolff*, are not

20 necessarily appropriate to a Nebraska parole determination.").[4] Thus, due process

21 does not require the Board to specify *any evidence* supporting a parole decision.

22 *Greenholtz*, 442 U.S. at 15-16. The Supreme Court recognized that a parole authority

23 offers a statement of reasons as a guide for the inmate's future behavior, not as a

24 summary of evidence which ". . . would tend to convert the process into an adversary

25 ///

26

27      4. *See Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972); *Gagnon v.
Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756 (1973); *Wolff v. McDonnell*, 418 U.S. 539, 94
28 S.Ct. 2963 (1974).

1  proceeding and to equate the [parole authority's] parole-release determination with

2  a guilt determination." *Id.*

3      The Supreme Court explained this limitation on judicial intrusion into the

4  merits of parole decisions by focusing on the long-term goal of parole as a tool for

5  rehabilitation. *Greenholtz*, 442 U.S. at 13-14. The Court acknowledged that there

6  is "[n]o ideal, error-free way to make parole-release decisions" and noted that there

7  are inevitable problems and disappointments attendant to state parole systems. *Id.* at

8  13. The Supreme Court emphasized, however, that the goal of rehabilitation is

9  furthered by fostering experimentation with parole, not creating burdens that impede

10  the state's efforts. *Id.* ("Our system of federalism encourages this state

11  experimentation. If parole determinations are encumbered by procedures that states

12  regard as burdensome and unwarranted, they may abandon or curtail parole.")

13      Thus, Petitioner's claims contravene the holding and the reasoning of

14  *Greenholtz* which limits judicial scrutiny into the merits of the Board's decision and

15  the evidence upon which it relied. The AEDPA is not an avenue for broadening

16  federal law beyond that which has been clearly established by the Supreme Court.

17  In the absence of such clearly established federal law, AEDPA mandates deference

18  to the state courts to preserve the constitutional rights of inmates challenging parole

19  denials. *See* 28 U.S.C. § 2254(d).

20      **d.    The Supreme Court Effectively Overruled Ninth Circuit**
         **Precedent That Applied The Some-Evidence Test as Clearly**
21       **Established Federal Law.**

22      In addition, to the extent that the Ninth Circuit has evaluated the Board's

23  decisions under the some-evidence test, intervening Supreme Court authority has

24  effectively overruled those circuit precedents. *See Musladin*, 127 S. Ct. at 654.

25  Respondent acknowledges that this Court is generally bound by previous decisions

26  of the Ninth Circuit. However, Supreme Court authority can undercut the

27  precedential value of those decisions such that they are no longer binding. *Miller v.*

28  *Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003). The Ninth Circuit Court has held

1   that the Supreme Court's resolution of an issue is controlling on a three-judge panel

2   when its ruling is "clearly irreconcilable" with the theory or reasoning of a circuit

3   decision. *Id*. at 900.

4       The *Gammie* court found persuasive the theory of *stare decisis* espoused by

5   Justice Scalia and Justice Kennedy, that the lower courts are bound not only by the

6   holdings of a higher court, but also by its "mode of analysis" or "explications of the

7   governing rule of law." 335 F.3d at 900 (citations and quotations omitted). The goal

8   of preserving the consistency of circuit law ". . . must not be pursued at the expense

9   of creating an inconsistency between our circuit decisions and the reasoning of state

10  or federal authority embodied in a decision of a court of last resort." *Id*.

11      The Supreme Court's recent holdings present a conflict with the previous

12  decisions of the Ninth Circuit that have applied the some-evidence test in the parole

13  context. *See, e.g., Sass v. Cal. Bd. of Prison Terms,* 461 F.3d 1123, 1128 (9th Cir.

14  2006); *see also Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003). The some-

15  evidence test was taken from the Supreme Court's decision in *Superintendent v. Hill*,

16  472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985), and was found applicable to

17  parole matters because a parole denial and a disciplinary conviction ". . . both directly

18  affect the duration of the prison term." *Sass*, 461 F.3d at 1128. However, the

19  Supreme Court effectively overruled this reasoning. *See Musladin*, 127 S. Ct. at 654.

20      In *Musladin*, the Supreme Court considered whether spectator conduct was

21  subject to the test for inherent prejudice that governed state-sponsored conduct. 127

22  S. Ct. at 651-52. The Ninth Circuit panel had granted habeas corpus relief after

23  concluding the Supreme Court had clearly established the applicable test for inherent

24  prejudice. *Id*. at 652. However, the Supreme Court disagreed: "although the Court

25  articulated the test for inherent prejudice that applies to state conduct [], we have

26  never applied that test to spectators' conduct." *Id*. at 653-54.

27      Just as courts may not analogize state-sponsored conduct to spectator conduct

28  for purposes of AEDPA review, this Court cannot apply the some-evidence test by

1    analogizing a parole denial to a good-time credit revocation. A prison disciplinary

2    proceeding is an adversarial process involving charges of misconduct and potential

3    disciplinary penalties. It is retrospective and involves fact-finding. In contrast, a

4    parole hearing is prospective and invokes the Board's judgment and prediction of

5    future behavior. Indeed, the Supreme Court refrained from any review that would

6    push a parole hearing into adversarial waters. *Greenholtz*, 442 U.S. at 15-16; *see also*

7    *Hill*, 472 U.S. at 455 (finding the some-evidence test was appropriate because

8    disciplinary boards must explain the evidence supporting their ruling).

9         The holding of *Musladin* prevents a court from inferring clearly established

10   federal law where the case at bar is factually distinguishable from the Supreme Court

11   case. *See Musladin*, 127 S. Ct. at 653-54. As such, that case is clearly irreconcilable

12   with circuit precedent. Thus, this Court must evaluate the rationale of *Sass*, et al., in

13   light of the Supreme Court's recent authority.

14        Respondent acknowledges that, after *Musladin* was decided, the Ninth Circuit

15   considered another parole case in which the Court applied the some-evidence test to

16   uphold a parole denial. *Irons v. Carey*, 505 F.3d 846, (9th Cir. 2007), rehearing

17   denied, *Irons v. Carey*, 506 F.3d 951 (9th Cir. 2007). However, the precedential

18   value of *Irons* is questionable because it did not address *Musladin*.

19        The Ninth Circuit has held that controlling authority remained "intervening"

20   even when it preceded final disposition of the case because the order denying

21   rehearing failed to discuss that authority. *Landreth v. C.I.R.*, 859 F.2d 643, 648 (9th

22   Cir. 1988). This view comports with the principles embraced in *Gammie* because the

23   lower courts must take a "flexible approach" rather than rigidly adhere to prior

24   decisions despite Supreme Court authority to the contrary. *See Gammie*, 335 F.3d at

25   899.

26        Furthermore, the Supreme Court's subsequent rulings have reaffirmed the

27   holding and the reasoning of *Musladin*. The Supreme Court acknowledged the

28   tension between its decisional law and the Ninth Circuit's AEDPA analysis by

1  remanding two matters for further consideration in light of *Musladin*.  *Patrick v.*
2  *Smith*, 127 S. Ct. 2126, 167 L. Ed. 2d 861 (2007); *Knowles v. Mirzayance*, 127 S. Ct.
3  1247, 167 L. Ed. 2d 57 (2007).  The circuit court decisions in those matters did not
4  address *Musladin*.  *See Mirzayance v. Knowles*, 175 Fed. Appx. 14 (9th Cir. 2006);
5  *see also Smith v. Mitchell*, 437 F.3d 884 (9th Cir. 2006).

6        Additionally, after *Irons*, the Supreme Court issued another decision limiting
7  AEDPA review in a similar manner as in *Musladin*.  *See Schriro v. Landrigan*, __
8  U.S. __, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007).  The Supreme Court disagreed
9  with the circuit court's AEDPA analysis.  *Id*. at 1937-38.  The lower court found that
10 clearly established federal law permitted AEDPA review over the defendant's
11 ineffective assistance of counsel claims.  *Id*. at 1942.  However, the Supreme Court
12 factually distinguished its cases and ruled that its holdings did not clearly establish
13 an entitlement to habeas corpus relief where the defendant was responsible for
14 impeding counsel's efforts at trial.  *Id*.  Again, factual distinctions prevented
15 application of a Supreme Court's holding to another case by analogy.

16       Thus, because *Greenholtz* is the only clearly established Supreme Court
17 authority addressing parole decisions, *Musladin* prohibits application of the some-
18 evidence test of *Hill*, 471 U.S. 455, to parole matters.  Accordingly, Petitioner is not
19 entitled to relief under the AEDPA because the state court decisions were not contrary
20 to, or an unreasonable application of, clearly established Supreme Court authority.
21 *See Musladin*, 127 S. Ct. at 653-54.

22    **e.    Even Assuming That The Some-Evidence Test Applies**
      **to State Parole Decisions, The State Court Decisions**
23    **Properly Found That There Was Some Evidence to**
      **Support The Board's Decision.**
24

25       Even under the some-evidence test, Petitioner's claims fail.  The some-
26 evidence test is a deferential standard, guarding against arbitrary deprivations of due
27 process.  *See Hill*, 472 U.S. at 455.  This test is "minimally stringent" and  requires
28 no more than "a modicum of evidence."  *Id*.  The reviewing court may not

1  independently assess the credibility of witnesses or independently weigh the
2  evidence. *Id.* Due process is satisfied so long as "there is any evidence in the record
3  that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

4  Here, Petitioner erroneously relies on two California Court of Appeal
5  decisions, *In re Scott*, 133 Cal. App. 4th 573 (2005), and *In re Smith*, 114 Cal.App.4th
6  343 (2003), in support of his claim. (Petn., Attach. at 6(A).)  These decisions
7  interpreted *state* law, however, and engaged in a putative some-evidence review by
8  comparing one inmate's crimes to the crimes of other inmates for the purpose of
9  determining whether the crime was more aggravated or violent than the minimum
10 elements necessary to sustain a conviction for that crime. *Scott*, 133, Cal.App.4th at
11 595-98; *Smith*, 114 Cal.App.4th at 367.   These decisions further required the
12 decision-maker to point to a "nexus" between the factual evidence supporting the
13 regulatory parole-consideration factors and the inmate's current risk to public safety.
14 *Scott*, 133 Cal. App.4th at 595-98; *Smith*, 114 Cal.App.4th at 371.

15 Petitioner's reliance on these cases is misplaced because they do not represent
16 clearly established California law, much less federal law for the purpose of federal
17 habeas corpus review. The California Supreme Court has recently granted review of
18 the reasoning set forth in the above decisions in three California Court of Appeal
19 cases: *In re Lawrence* (Cal. Sup. Ct. Case No. S154018), *In re Cooper* (Cal Sup. Ct.
20 Case No. S155130), and *In re Shaputis* (Cal. Sup. Ct. Case No. S155872).[5]
21 Furthermore, at least two other state appellate courts have rejected the reasoning of
22 the above decisions, finding that a comparison of crimes departs from the standard
23 of review prescribed by California Supreme Court in *In re Rosenkrantz*, 29 Cal. 4th
24 658, 658 (2002), transmuting the standard into one that reweighs the evidence. *See*
25 *In re Jacobson*, 154 Cal.App.4th 849 (2007); *see also In re Hyde*, 154 Cal.App.4th
26 1200, 1210-1214 (2007).

27

28    5. The California Supreme Court's docket for each of these cases can be found
    at:  http://appellatecases.courtinfo.ca.gov

1    More importantly, however, the United States Supreme Court has never held

2   that the some evidence standard announced in *Hill* requires federal courts to encroach

3   on the discretionary balancing of evidence, or the ultimate discretionary

4   determination of suitability. Even though California courts utilize a some-evidence

5   standard of review, it is important for federal courts to recognize that the California

6   standard is not synonymous with the *Hill* standard. In *Rosenkrantz,* 29 Cal. 4th at

7   658, the California Supreme Court held that some evidence must be based upon state

8   regulations, stating:

9       [T]he judicial branch is authorized to review the factual basis of a
        decision of the Board [determining parole suitability and setting a parole
10      date] in order to ensure that the decision comports with the requirements
        of due process of law, but that in conducting such a review, the court
11      may inquire only whether some evidence in the record before the
        [decision maker] supports the decision to deny parole, *based upon the*
12      *factors specified by statute and regulation.*

13  *Id.* (emphasis added).

14    California Penal Code section 3041(a)-(b), sets forth the law governing parole

15  determinations and requires that the parole authority set a parole release date unless

16  it determines that the gravity of the current convicted offense or offenses, or the

17  timing and gravity of current or past convicted offenses is such that consideration of

18  the public safety requires a more lengthy period of incarceration. California Code of

19  Regulations, title 15, section 2401 further sets out specific factors that the Board

20  must consider in determining an inmate's parole suitability, stating that "all available

21  relevant, reliable information shall be considered in determining suitability for

22  parole."   Cal. Code Regs, tit. 15, § 2401(b).   This information includes the

23  circumstances of the prisoner's social history; past and present mental state; past

24  criminal history, including involvement in other criminal misconduct which is

25  reliably documented; the base and other commitment offenses, including behavior

26  before, during and after the crime; past and present attitude toward the crime; any

27  conditions of treatment or control, including the use of special conditions under

28  which the prisoner may safely be released to the community; and any other

1  information which bears on the prisoner's suitability for release.  The regulations

2  further provide that circumstances, which taken alone may not firmly establish

3  unsuitability for parole, may contribute to a pattern which results in a finding of

4  unsuitability.[6/]  Cal. Code Regs. tit. 15, § 2401(b).

5      In contrast to California's extensive regulations, the federal due process

6  standard set forth in *Hill* does not specify any specific criteria that must be examined

7  in making a parole determination.  This is because the United States Supreme Court

8  has long recognized that, while the United States Constitution provides a solid floor

9  of constitutional protections, the states may build a ceiling of protection over that

10 federal floor.  *California v. Greenwood*, 486 U.S. 35, 43, 108 S. Ct. 1625, 100 L. Ed.

11 2d 30 (1988) (determining whether a search and seizure is reasonable under the

12 Fourth Amendment does not depend on state law imposing additional constraints on

13 police conduct; "[i]ndividual states may surely construe their own constitutions as

14 providing more [individual protections] than does the Federal Constitution.")  Federal

15 courts are not, however, bound by state protections in determining whether a federal

16 constitutional violation has occurred.  *Id.*; *see also Cruzan v. Director, Missouri*

17 *Dept. of Health*, 497 U.S. 261, 277 (1990) ("State courts have available to them for

18 decision a number of sources – state constitutions, statutes, and common law, which

19 are not available to us."); *Moran v. Burbine,* 475 U.S. 412, 428 (1986) ("Nothing we

20 say today disables the States from adopting different requirements for the conduct of

21 its employees and officials as a matter of state law."); *California v. Ramos,* 463 U.S.

22

23

---

24      6. In addition, the regulations set forth a number of specific factors tending to
demonstrate an inmate's unsuitability for parole, including: the circumstances of the

25 commitment offense, such as whether the offense was carried out in a manner which
demonstrates an exceptionally callous disregard for human suffering; a previous

26 record of violence; a trivial or inexplicable motive for the crime; an unstable social
history, including tumultuous relationships with others; and the inmate's institutional

27 behavior.  Cal. Code Regs. tit. 15, §§ 2401 (c)(1)(D), 2401(c)(2)-(6).

28

1    992, 1013-14 (1983) ("It is elementary that States are free to provide greater

2    protections in their criminal justice system than the Federal Constitution requires.").

3        Furthermore, the Federal Constitution must take into account the diversity

4    among the states and devise constitutional limits that are appropriate for all places

5    and situations. As the *Federal* Constitution, it establishes a uniform set of protections

6    that all states must respect. Although its interpretation evolves over time, it does so

7    slowly, giving rise to *national* rules only when they have a clear *national* foundation

8    in evolving attitudes and needs. *See generally Cruzan*, 497 U.S. at 280-88; *Bridges*

9    *v. California*, 314 U.S. 252, 281-82 (1941). As such, the United States Constitution

10   establishes *a minimum* -- the threshold of protection that a state may provide to its

11   citizens. It does not establish a maximum.

12       Here, the Los Angeles County Superior Court issued the last reasoned decision

13   rejecting Petitioner's claims under state law.[7] The superior court found that the

14   Board properly cited Petitioner's crime in support of its decision because there was

15   some evidence to support the Board's finding that the commitment offense was

16   carried out in a dispassionate and calculated manner, and the motive for the crime was

17   very trivial in relation to the offense. (Lodg. 5, *citing Rosenkrantz*, 29 Cal. 4th at

18   667). The court also noted that the Board properly relied on several additional pre-

19   commitment factors under the state regulations, such as Petitioner's criminal record,

20   his unstable social history, and a psychologist's evaluation of an anti-social

21   personality disorder. (*Id.*, *citing* Cal. Code Regs., tit. 15, § 2402 (c)(2), (c)(3), (d)(2).)

22   The Court additionally found that there was sufficient evidence to support the

23   Board's conclusion that Petitioner needed to participate in additional institutional

24   ///

25

26      7.   Under the "look-through" doctrine, a summary denial issued by the

27   California Supreme Court is deemed to rest on the same grounds as the lower court's

28   decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804-05, 111 S. Ct. 2590, 115 L. Ed. 2d
706 (1991).

1  programming and self-help therapy to indicate an enhanced ability to function within

2  the law upon release. (*Id.*, *citing* Cal. Code Regs., tit. 15, § 2402 (d)(9).)

3      The record amply supports the superior court's decision. Accordingly, because

4  the Board's decision is supported by more than the "meager" evidence that is

5  constitutionally sufficient under the some-evidence test, neither the reasoning, nor the

6  result of the Los Angeles County Superior Court's decision is contrary to, or an

7  unreasonable application of the Supreme Court's *Hill* standard.

8      **f.**    **There is no Clearly Established Federal Law Precluding**
    **Reliance On Unchanging Factors Such as The Commitment**
9      **Offense.**

10      Finally, Petitioner's relies on the Ninth Circuit's dicta in *Biggs*, 334 F.3d at

11  916-17, in support of his claim that the Board improperly relied on unchanging

12  factors in denying parole. (Pet., Attach. at 5(A).)  This reliance is also misplaced

13  because *Biggs* never held that reliance solely on the circumstances of the commitment

14  offense was improper. On the contrary, *Biggs* held that the Board's decision to deny

15  parole was properly based on some evidence, despite finding that several of the

16  Board's conclusions were unsupported by the evidence, and where the Board relied

17  solely on the offense and conduct before imprisonment to justify denying a prisoner

18  parole. *Biggs,* 334 F.3d at 915-17.  In reaching this conclusion, the Ninth Circuit

19  observed:

20      Over time . . . *should Biggs continue* to demonstrate exemplary behavior
and evidence of rehabilitation, denying him a parole date simply because
21      of the nature of Biggs' offense and prior conduct *would raise serious
questions* involving his liberty interest in parole . . . . A continued
22      reliance in the future on an unchanging factor, the circumstance of the
offense and conduct prior to imprisonment, runs contrary to the
23      rehabilitative goals espoused by the prison system and *could result* in
a due process violation.
24

25  *Biggs,* 334 F.3d at 916-17 (emphasis added).

26      These statements do not alter the conclusion that the superior court's rejection

27  of Petitioner's claims was neither contrary to, nor an unreasonable application of, any

28  clearly established federal law as determined by the United States Supreme Court.

1   Section 2254(d)(1)'s reference to "clearly established federal law" "refers to holdings,

2   as opposed to the dicta, of [Supreme Court] decisions." *Williams*, 529 U.S. at 365.

3   The statements from *Biggs* quoted above are the dicta of the Ninth Circuit, not the

4   Supreme Court.

5         Even if these statements were the pronouncements of the United States

6   Supreme Court, they would not amount to clearly established federal law.  The

7   statements express tentative, qualified views regarding the "serious questions" and

8   possible violations that "could result" in the future if reliance on unchanging factors

9   is "continued" for some unspecified period of time.  *Biggs*, 334 F.3d at 916-17.

10  Indeed, in *Irons,* 505 F.3d 846, the Ninth Circuit recently clarified that the *Biggs* dicta

11  expressed the Court's desire rather than clearly established federal law, stating: "*We*

12  *hope* that the Board will come to recognize that in some cases, indefinite detention

13  based solely on an inmate's commitment offense, regardless of the extent of his

14  rehabilitation, will at some point violate due process." *Id.* at 854 (emphasis added).

15  The Court nevertheless concluded that "we cannot say that the state court

16  unreasonably applied Hill's some evidence principle." *Id.*  Accordingly, given the

17  tentative, qualified, and somewhat vague nature of the *Biggs* dicta, the state court

18  decisions were not contrary to, or an unreasonable application of, any clearly

19  established federal law.

20                                          **II.**

21        **THE BOARD'S 2005 DECISION DENYING PAROLE DID NOT
          VIOLATE PETITIONER'S PLEA AGREEMENT BECAUSE**

22        **PETITIONER RECEIVED THE BENEFIT OF HIS BARGAIN.**

23        Last, Petitioner contends that the Board must provide "reciprocal benefits" of

24  a "lessened punishment" for violating his plea agreement. (Petn., Attach. at 6(b).)

25  This contention is also without merit because the record reveals that Petitioner

26  received the benefit of his bargain, which was a reduced charge and the dismissal of

27  special allegations that could have resulted in the death penalty.

28  ///

                                          21

1    In addressing alleged violations of plea agreements, the Ninth Circuit has held

2 that such agreements are contractual in nature and are therefore measured by contract

3 law standards. *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003). In *Santobello*

4 *v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), the Supreme

5 Court held that the government is bound by plea agreements and that, when a plea

6 rests in any significant degree on a promise or agreement of the prosecutor, so that

7 it can be said to be part of the inducement or consideration, such a promise must be

8 fulfilled. Thus, the question is whether the prosecutor promised Petitioner that the

9 Board would grant parole at some specified point in time. As a preliminary matter,

10 Petitioner fails to allege even a cognizable claim for relief because he does not allege

11 that any such representations were ever made.

12    In addition, petitioner does not allege the specific terms of his plea agreement,

13 nor has he attach of copy of the plea agreement or plea hearing transcript to his

14 petition.[8]  Instead, the record reveals that Petitioner was charged with first degree

15 murder, with a penalty of either death or life imprisonment without parole under

16 California Penal Code § 190.2(a)(17) for the special circumstances of murder during

17 the commission of a robbery. Petitioner was additionally charged with a firearm use

18 enhancement pursuant to California Penal Code § 12022.5. (Lodg. 3.) In exchange

19 for his plea of guilty to the lesser offense of second degree murder, he received the

20 dismissal of the special circumstances allegation and firearm use enhancement.

21 Petitioner was then sentenced to fifteen years to life in state prison. (Lodgs. 1, 2.)

22 This sentence made Petitioner *eligible* for parole and Petitioner does not allege that

23 any specific statements were made promising him otherwise.

24 ///

25

26

27

28

---

8. Respondent was unable to obtain a copy of petitioner's plea agreement or plea hearing transcript prior to the due date for filing this Answer. Respondent is in the process of obtaining these documents and will lodge them with this Court under separate cover as soon as they become available.

1   What Petitioner does allege is that he had a subjective expectancy of parole
2   based upon the matrix of base terms set forth in California Penal Code section 3041.
3   (Petn., Attach. at 6(b).) Yet, California Penal Code section 3041 clearly provides that
4   it is only after an inmate is found suitable for parole, that the Board will then engage
5   in setting a "uniform term" and resultant release date. The California Supreme Court
6   clarified that California's parole scheme is a two-step process. *In re Dannenberg*, 34
7   Cal. 4th 1061 (2005). First, an inmate must be found suitable for parole. The second
8   step, setting a release date, is only reached when an inmate is found suitable. *Id.* at
9   1091. Petitioner has never been found suitable for parole.

10   In sum, the record demonstrates that Petitioner's decision to enter a plea was
11   prompted by the reduced charge, as well as the dismissal of the special allegations.
12   Even if Petitioner subjectively expected to be released on parole at an earlier date,
13   such an expectation is insufficient to demonstrate that his plea rested "in any
14   significant degree on a promise or agreement of the prosecutor." *Santobello*, 404
15   U.S. at 262. Consequently, Petitioner is not entitled to federal habeas corpus relief
16   for this claim.

17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

## CONCLUSION

The state court decisions upholding the Board's 2005 decision finding Petitioner unsuitable for parole are not contrary to, nor an unreasonable application of, federal law. Petitioner does not contest that he received all of the process that he was due under controlling federal law. In addition, even assuming that Petitioner is entitled to additional process under the some-evidence standard of review of *Hill*, there was sufficient evidence to support the Board's decision. Furthermore, the Board's decision denying Petitioner's early release on parole did not violate his plea agreement because Petitioner received the benefit of his bargain, which was a life sentence, and he remains eligible for parole consideration. Thus, this Court must deny the Petition.

Dated: December 13, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

HEATHER BUSHMAN
Supervising Deputy Attorney General

KIM AARONS
Deputy Attorney General
Attorneys for Respondent

KA:fpt
70108520.wpd
SD2007700801

24

# DECLARATION OF SERVICE BY U.S. MAIL

Case Name:          **Ransom v. Curry**

Case No.:           **07-CV-04453-PSG (JCR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter; my business address is 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266.

On <u>December 13, 2007</u>, I served the attached:

**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Diego, California, addressed as follows:

**Darryl Ransom, CDC #E40704**
**Correctional Training Facility**
**P.O. Box 686**
**Soledad, CA 93960-0686**

***In Pro Per***

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on December 13, 2007, at San Diego, California.

F. Terrones
_____          _____
          Declarant                              Signature

70109648.wpd