

1  Darryl Ransom #40704
   P. O. Box 689, (FW-315-Up)
2  Soledad, California.
   Zip.   93960-068

3

4  IN  PRO  SE

5

6              IN THE UNITED STATES DISTRICT COURT

7          FOR THE CENTRAL DISTRICT OF CALIFORNIA

8                      WESTERN DIVISION

9

10 In re Darryl Ransom,        )   Case No. CV 07-04453-PSG (JCR)
        (Petitioner)           )
11                             )   TRAVERSE IN REPLY TO RESPONDENTS
          v.                   )   ANSWER TO PETITION FOR WRIT OF HABEAS
12                             )   CORPUS; MEMORANDUM OF POINTS AND
   Ben Curry, (Warden) (A)     )   AUTHORITIES IN SUPPORT THEREOF.
13        (Respondent)         )
   ────────────────────────────)
14                                 JUDGE: The Honorable John Charles Rayburn
                                          Jr.
15 ///

16 ///

17 ///

18

19

20

21

22

23

24

25

26

27

28

                              i.

# T A B L E   O F   C O N T E N T S

Cover Page ................................................................. i.
Table of Contents ........................................................ ii.
Table of Authorities ............................................ iii – iv.
Memorandum of Points and Authorities ............................... 4-33.
    Introduction ...................................................... 1-3.
    Arguments ......................................................... 4-33.

I.    THE STATE COURT'S DENIAL OF RANSOM'S CLAIMS WAS AN
        UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL
        LAW AS DETERMINED BY THE SUPREME COURT OF THE UNITED
        STATES. ...................................................... 4-10.

        A.)  STATE LAW REQUIRES MORE THAN THE FEDERAL
              CONSTITUTION DOES OF ITS OWN FORCE WITH RESPECT
              TO PAROLE DECISIONS IN CALIFORNIA. ....................... 5-6.

        B.)  APPLICATION OF THE "OTHERWISE ARBITRARY" PORTION
              OF THE "SOME EVIDENCE" STANDARD AND EXTENT OF THE
              LIBERTY INTEREST. ...................................... 6-10.

II.   RANSOM HAS A PROTECTED LIBERTY INTEREST IN PAROLE UNDER THE
        DUE PROCESS CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS;
        THUS, THIS COURT'S REVIEW MUST INCLUDE A DETERMINATION OF
        RANSOM DUE PROCESS RIGHTS. .............................. 10-26.

        A.)  RANSOM HAS A LIBERTY INTEREST IN PAROLE UNDER THE
              DUE PROCESS CLAUSE OF THE UNITED STATES. ............. 11-12.

        B.)  RANSOM HAS A PROTECTED LIBERTY INTEREST UNDER THE DUE
              PROCESS CLAUSE OF THE CALIFORNIA CONSTITUTION WHICH
              IS PROTECTED UNDER THE "SOME EVIDENCE" STANDARD OF
              REVIEW. ............................................... 12-26.

III.  THE BOARD'S PAROLE DENIAL IGNORED THE FACTORS DEMONSTRATING
        RANSOM'S SUITABILITY FOR PAROLE. ....................... 26-28.

IV.   NO EVIDENCE SUPPORTS THE BOARD'S CONCLUSION THAT RANSOM
        POSES A "CURRENT UNREASONABLE" THREAT TO PUBLIC SAFETY.....28-31.

V.    THE BOARD'S REFUSAL TO RELEASE RANSOM ON PAROLE IS AN
        UNLAWFUL, UNGUIDED ABUSE OF IT'S DISCRETION.      31-33.

Conclusion ............................................................. 33.

# T A B L E   O F   A U T H O R I T I E S

**United States Constitution:**

5th ..................................................... 15.
14th Amendment .................................... 11,15.

**Federal Statutes:**

28 U.S.C.  §  2254 ..................................... 4.
28 U.S.C.  §  2254(d)-(1) ............................. 4.

**Federal Cases:**

Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003) ..5,7,8,9,10,12,28,29,30,31,32.
Board of Pardons v. Allen, 482 U.S. 369, 377-378 (1987) ....... 4,5,10,12,29.
Coleman v. Board of Prison Terms, Case No. (96-0783 LKK PAN),
   (E. D. Cal. 2005) ............................................. 9.
Cooper-Smith v. Palmateer, 397 F.3d 1236, 1242 (9th Cir. 2005) ........... 4.
Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1,
   99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ................... 4,5,10,12,29.
Irons v. Warden, 358 F.Supp.2d 936 (E. D. Cal. 2005) ........... 7,8,30,31.
Irons v. Carey, __ F.3d __ (9th Cir. 2007) ...................... 9.
Jancsek v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992) ................. 20.
Jerome Thomas v. Jill Brown, (Warden), Case No. (C -05-1332 MHP)
   (N. D. Cal. 2006) ............................................ 10.
Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123 (1951) ........ 10.
Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 459, 460
   (1989) ..................................................... 11.
Lankford v. Idaho, 500 U.S. 110 (1991) ............................ 10.
McQuillion v. Duncan, 306 F.3d 895, 903 (9th Cir. 2003) ............ 4,11.
Morrissey v. Brewer, 408 U.S. 471 (1972) .......................... 11.
Rosenkrantz v. Marshall, 444 F.Supp.2d 1063, 1065, 1070 ......... 9,30,33.
Sanchez v. Kane, 444 F.Supp.2d 1049 (C.D. Cal. 2006) ................. 9.
Sandin v. Conner, 515 U.S. 472 (1995)
Sass v. California Board of Prison Terms, 461 F.3d 1123
   (9th Cir. 2006) ........................................... 9,10.
Superintendent v. Hill, 472 U.S. 445 (1985) .................... 5,10,14.
Williams v. Taylor, 529 U.S. 362, 382 (2000) ...................... 10.
Martin v. Marshall, (N. D. Cal. 2006) 431 F.Supp.2d 1038 ........... 9,21.

**Califoria Constitution:**

Article I,  §  7(a) ................................... 13,15.

**California Statutes:**

(Penal Code)

§    190(a)  ........................................ 31.
§   1168(b) ........................................ 31.
§   3040  .......................................... 31.
§   3041 ........................................... 13.
§   3041(a) .................................... 6,17,19,28.
§   3041(b) .................................... 12,13,18,20.

T A B L E   O F   A U T H O R I T I E S   ( C O N . T )

## California Administrative Regulations:

(California Code of Regulations, Title 15)
§   2281(b) ........................................................ 15.
§   2282(b) ........................................................ 19.
§   2401 ........................................................... 13.
§   2402(b) ........................................... 13,15,17,19.
§   2402(c) .............................................. 15,16.
§   2402(c)-(1),(b)-(D)-(E) ........................... 18.
§   2402(c)-(3) ............................................... 19.
§   2402(c)-(5) ............................................... 19.
§   2402(c)-(6) ............................................... 20.
§   2402(c),(d) ............................................... 15.
§   2402(d) ............................................. 16,26,27.
§   2402(d)-(7) ............................................... 27.
§   2402(d)-(8) ............................................... 27.
§   2402(d)-(9) ............................................... 27.
§   2403(c) ................................................. 31,32.
§   2403(c)-(III)-(b) ...................................... 32.
§   2410 .......................................................... 19.

## California State Cases:

In re Barker, (2007) ___ Cal.App.4th ___ [2007 WL 1502277] ............ 11.
In re Dannenberg, (2005) 34 Cal.4th 1061 ...................... 5,6,13,14.
In re DeLuna, (2005) 126 Cal.App.4th 585 ......................... 15.
In re Elkins, (2006) 50 Cal.Rptr.3d 503 ........................... 8.
In re Elkins, (2006) 144 Cal.App.4th 475, 521 .................... 11.
In re Gray, (2007) ___ Cal.App.4th ___ [2007 WL 1475283] .............. 11.
In re Lawrence, (2007) ___ Cal.App.4th [2007 WL 1475283] .............. 11.
In re Lee, (2006) 49 Cal.Rptr.3d 931 ............................. 8.
In re Lee, (2006) 144 Cal.Rptr.4th 1400, 1408 ................... 11.
In re Morrall, (2002) 125 Cal.Rptr.2d 391 ....................... 20.
In re Powell, (1988) 45 Cal.3d 894, 904 ...................... 13,14.
In re Rodriguez, (1975) 14 Cal.3d 639 ...................... 31,32,33.
In re Rosenkrantz, (2002) 29 Cal.4th 616 ........ 6,7,8,13,14,29.
In re Rosenkrantz, Supra, 29 Cal.4th at pp. 653, 654, 655, 658.13,14,15,16,17.
In re Scott, (2004) 119 Cal.App.4th 871, 888, 897 ............. 15,17,19.
In re Scott, (2005) 34 Cal.Rptr. 905, 919-920 ................ 7,21.
In re Scott, (2005) 133 Cal.45h 573, 591 ........................ 15.
People v. Ramirez, 94 Cal.App.4th 549 .......................... 27.
People v. Ramirez, (1979) 25 Cal.3d 260, 266, 269 .............. 13.
People v. Murtishaw , (1981) 29 Cal.3d 733, 763 ................. 7.
In re Van Houten, (2004) 116 cal.App.4th 339 ................... 18.

1 | Darryl Ransom E-40704
P. O. Box 689
2 | Soledad, California.
Zip. 93960-0689

3

IN PRO SE

4

5 | IN THE UNITED STATES DISTRICT COURT

6 | FOR THE CENTRAL DISTRICT OF CALIFORNIA

7 | WESTERN DIVISION

8

9 | In re Darryl Ransom,        )    Case No. CV 07-04453 PSG (JCR)
    (Petitioner)            )
10 |                          )    TRAVERSE IN REPLY TO RESPONDENTS ANSWER
     v.                      )    TO PETITION FOR WRIT OF HABEAS CORPUS;
11 |                         )    MEMORANDUM OF POINTS AND AUTHORITIES IN
   Ben Curry, (Warden) (A)   )    SUPPORT THEREOF.
12 |   (Respondent)          )
                             )    JUDGE: THE HONARABLE JOHN CHARLES
13 | _____)    RAYBURN JR.

14 | T R A V E R S E

15 | TO THE HONORABLE JOHN CHARLES RAYBURN JR. UNITED STATES
   MAGISTRATE JUDGE:

16

17 | Petitioner Darryl Ransom (hereafter Ransom) respectfully submits this

18 | Traverse to the answer filed by respondent on December 13, 2007 and state as

19 | follows:

20 | Respondents have failed to set forth sufficient facts or law to show cause

21 | why the relief prayed for should not be granted.

22 | 1.) Ransom admits for purposes of this action the allegation in paragraph

23 | (1) of the answer that he is housed at the Correctional Training

24 | Facility at Soledad (C.D.C.R.), and he was convicted in Los Angeles

25 | County Superior Court (by Plea Agreement); however, Ransom denies the

26 | allegation in paragraph (1) that he is lawfully in custody.

27 | 2.) Paragraph (2) of respondent's answer is true.

28 | 3.) Ransom admits to the allegation in paragraph (3) that he appeared

1.

1    before the Board on September 28, 2005, but denies he would pose a

2    threat to the public if released.

3    4.) Ransom denies the allegation in paragraph (4) of respondent's answer.

4    5.) Paragraph (5) of respondent's answer is true except for crimes Ransom

5    was not convicted for.

6    6.) Ransom denies all the allegation in paragraph (6) respondent error by

7    stating Ransom had an anti-social personality disorder. The

8    Psychological report clearly states that Ransom   would be below

9    average if released. Ransom is competent and responsible for his

10   behavior. (See respondent's lodgment # 4, Ransom's Exhibit "B",

11   Psychological Report.)

12   7.) Ransom admits to the allegation in paragraph (7) of respondent answer

13   but denies his positive gains don't out weight the negative and his

14   positive progress is not recent. (See Respondent's Lodgment # 4,

15   Ransom's Superior Court Writ at page 4-6)

16   8.) Ransom admits to the allegation in paragraph (8) of respondent's

17   answer but denies there is some evidence in the record.

18   9.) Ransom admits to the allegation in paragraph (9) of respondent answer.

19   10.) Ransom denies paragraph (10)

20   11.) Ranson denies  the allegation in paragraph (11) of respondent answer

21   and states he has shown that the state court decisions upholding

22   the Board's denial was contrary to, and an unreasonable application

23   of clearly established Federal Law.

24   12.) Ranson denies the allegation in paragraph (12) of respondent's answer.

25   Respondent's claim that Ransom is not entitled to federal relief and

26   that Ransom does not have federally protected liberty interest is

27   mistaken under **McQuillon v. Duncan**, 306 F.3d 895, 903 (9th Cir. 2003)

28   all California Prisoner's enjoy a liberty interest in parole release.

2.

1    And **Greenholtz v. Inmate's of Neb. Penal and Corr. Complex**, 442 U.S.

2    1, 99 S.Ct. 2100, 60 L.Ed. 2d 668 (1979) is the only methodology and

3    controls parole.

4    13.) Ransom denies paragraph (13)

5    14.) Ransom denies paragraph (14) that his Due Process rights was violated.

6    15.) Ransom denies paragraph (15) he has not received the benefits of his

7         Plea Agreement.

8    16.) Ransom denies paragraph (16) an evidentiary hearing is necessary and

9         would help resolve the issues in this case.

10   17.) Except as expressly admitted to Ransom denies each and every

11        allegations of respondent's answer. And re-alleges that his continued

12        confinement is improper and unlawful.

13    For the reasons stated in this Traverse and Memorandum of Points and

14   Authorities. This court should grant the Petition and order Ransom released

15   from prison.

16

17   **Date: January 3, 2008**

<u>Memorandum of Point and Authorities</u>

ARGUMENT

I.

THE STATE COURT'S DENIAL OF RANSOM'S CLAIMS WAS AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES.

Under the antiterrorism and effective death penalty act (AEDPA), a Federal Court may not grant Habeas relief unless the state court decison challenged is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the supreme court of the United States. 28 U.S.C. § 2254(d)-(1). AEDPA, limits the source of clearly established federal law to supreme court precedent, including the legal principles that flow from that precedent. **Cooper-Smith v. Palmater**, 397 F.3d 1236, 1242 (9th Ci. 2005).

**Greenholtz v. Inmates of Nebraska Penal and Correctional Complex**, 442 U.S. 1, (1979) established that all that is required by the Due Process clause of the **United States Constitution** of its own force is that an inmate be afforded an opportunity to be heard and when parole is denied that the inmate be informed in what respect he falls short of qualifying for parole. (**Id.** at 16.) However, **Greenholtz**, also established that the language and structure of State Statutes may create liberty interests which are entitled to great federal protection than afforded by the Due Process Clause of its own force. (**Id.** at 12; see also, **Board of Pardons v. Allen**, 482 U.S. 369, 377-378 (1987). The Ninth Circuit has determined that "[U]nder the 'clearly established' framework of **Greenholtz**, and **Allen**, .... California Parole scheme give rise to a cognizable libery interest in release on parole. **McQuillion v. Duncan**, 306 F.3d 895, 902 (2002). Further, this liberty interest is created, not upon

4.

1   the grant of a parole date, but upon the incarceration of the inmate."

2   **Biggs v. Terhune**, 334 F.3d 910, 915 (9th Cir. 2003).

3       Six years after **Greenholtz**, **Superintendent v. Hill**, 472 U.S. 445 (1985),

4   established the "some evidence" rule. The controling United States Supreme

5   Court law in this parole context is now "clearly established" Supreme Court

6   precedent. A parole Board's decision, like a prison disciplinary Board's

7   decision, deprives a prisoner of Due Process if it is not supported by

8   "some evidence" or is "Otherwise arbitrary." (**Id**. at p. 457).

9                                    A.

10      STATE LAW REQUIRES MORE THAN THE FEDERAL CONSTITUTION   DOES
        OF ITS OWN FORCE WITH RESPECT TO PAROLE DECISIONS IN
11      CALIFORNIA

12      When is a determination by the Board finding a prisoner unsuitable, and

13  a state court's  decision upholding that determination, an unreasonable

14  application of clearly established federal law? A decsion by the Board

15  denying parole may be "otherwise arbitary." Even if supported by "some

16  evidence". Although federal law establishes  the "some evidence" standard,

17  case law applying the highest state court's decisions informs us of what that

18  evidence may consist and to what it must pertain. If a state court decides

19  the Board's decision denying parole is supported by "some evidence" but

20  disregards evidence that the decision was "otherwise arbitrary," as informed

21  by case law, such application constitutes   an unreasonable application under

22  **Greenholtz**, **Allen** and **Hill**, the state court decision must be reversed under

23  the AEDPA and the Petition granted.

24      **In re Dannenberg**, (2005) 34 Cal.4th 1061, is often cited in support of

25  the proposition that under that decision California prisoner's have no

26  libery interest and that the commisssion of an offense alone is sufficient to

27  deny parole for as long as the Board wishes. However, **Dannenberg's** holding

28  only addressed the narrow question whether  the Board must engage in a

                                    5.

comparative proportionality analysis in setting parole dates pursuant to **Penal Code**, § 3041, subd. (a), and held that "[N]othing in the statute states or suggests that the Board must evaluate the case under standards of uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a continuing public danger." (**Id.** at 1070.), (underlining emphasis added).

**Dannenberg**, also explained that California prisoners have "a liberty interest and expectation ... to the extent that state law provides it." (**Id.** at 1098 n. 18) the extent to which prisoners in California have a liberty interest has previously been discussed by the California Supreme Court. **In re Rosenkrantz**, (2002) 29 Cal.4th 616, setting forth principles at p. 683. **Rosenkrantz**, was not overruled. (**Dannenberg**, 34 Cal.4th at 1094 ["our conclusion does not contravene **Rosenkrantz**, 29 Cal.4th 616."] Post-**Dannenberg**, state court's continues to follow **Rosenkrantz**, one principles was explained by Justice Moreno, in **Rosenkrantz**, explaining in his separate concurring opinion  "[T]here will come a point, which already may have arrived, when petitioner would have become eligible for parole if he had been convicted of first degree murder. Once petitioner reaches that point, it is appropriate to consider whether his offense would still be considered especially egregious for a First Degree Murder in order to promote the parole statute's goal of proportionality between the length of sentence and the seriousness of the offense." (**Id.** at 690). Justice Moreno, explained that it would be appropriate, at that point, for judicial reappraisal of the Board's decision.

B.

**APPLICATION OF THE "OTHERWISE ARBITRARY" PORTION OF THE "SOME EVIDENCE" STANDARD, AND EXTENT OF THE LIBERTY INTEREST.**

On June 26, 2006, the Los Angeles Superior Court reappraised and reversed

1  the Board's decision denying **Robert Rosenkrantz** parole. (**In re Rosenkrantz**,

2  Los Angeles Superior Court Case No. (BH003529). The Court of Appeals

3  subsequently refused to stay the decision  July 31, 2006, and on August 3,

4  2006, the California Supreme Court summarily denied the state's Petition

5  for Review. Significantly  the Superior Court cited **Biggs** and **Irons v. Warden**,

6  (E.D. Cal. 2005) 358 F.Supp.2d 936, as stating the applicable legal principles

7  and standard first stated by Justice Moreno. Thus, the OFT-Cited idea that

8  the commitment offense and past convicted offences alone are sufficient to

9  deny parole forever has been rejected by the California Supreme Court as

10 demonstrated by current state court decisions. In short:

11          "Yet, the predictive value of the commitment offense may be very
            questionable after a long period of time .. The Governor's
12          assumption that a prisoner may be deemed unsuitable for release
            on the basis of the commitment offense "alone" is corret, but
13          the proposition must be properly understood. The commitment offense
            is one of only two factors indicative of unsuitability a prisoner
14          cannot change (the other being his "previous record of violence").
            Reliance on such an immutable factor without regard to or
15          consideration of  subsequent circumstances may be unfair."
            **In re Scott**, (2005) 34 Cal.Rptr.3d 905, 919-92, Quoting
16          **Irons v. Warden**, (E.D. Cal.2005) 358 F.Supp.2d 936, 947.

17 The California Supreme Court has previously advised, "even where the

18 passage of time is not a factor and the assessment is made by an expert,

19 predictions of future dangerousness are exceedingly unreliable." **People v.**

20 **Murtishaw**, (1981) 29 Cal.3d 733, 768. Such predictions,  then, are exceedingly

21 unreliable and as such, is an unreasonable  basis for making a public safety

22 threat assessment. Application  of the principle is exemplified by the recent

23 Superior Court decision in **Rosenkrantz**, a well-known saga ending with the

24 California Supreme Court's denial of review and release of **Robert Rosenkrantz**

25 It demonstrates the practical application . of the "otherwise arbitrary"

26 portion of the "some evidence" rule and also informs what the extent of

27 the liberty interest is, even in a case such as **Rosenkrantz**, where the

28 circumstances of the offense were more egregious than the typical second

7.

1  degree murder, or Ransom's offense. **Rosenkrantz**, bought an uzi, practiced

2  with it, waited outside the victim's house all night and when he came out in

3  the morning, shot him ten times, some five of the shots after the victim lay

4  on the ground mortally wounded, and then bragged about it and posed with the

5  uzi. Given the latest decisions in that case, it is clear that use of the

6  offense as "some evidence" to deny parole has limits, and state court's have

7  agreed with **Biggs** and **Irons**, with respect to the process due.

8      In another affirmative statement of what state law requires, the California

9  Supreme Court recently remanded a case back to the Court of Appeals with

10  direction to address specific issues. The court of appeals was instructed to

11  vacate its summary denial and to issue an order to show cause why the

12  Governor did not abuse his discretion in reversing the Board's finding that

13  the petitioner was suitable for parole, why "some evidence" in the record

14  supported the determination and why the petitioner was not entitled to

15  release on parole. In that case, as in **Rosenkrantz,** there was evidence of

16  premeditation. **In re Wen Lee**, (2006) 49 Cal.Rptr.3d 931. The Court of Appeals

17  ordering the petitioner released, explained: "[T]he test is not whether

18  "some evidence" support <u>the reasons</u> the Governor cites for denying parole,

19  but whether "some evidence" indicates a parolee's release <u>unreasonably</u>

20  <u>endangers public safety</u>" (**Id**. at p. 936). (Underlining substituted for

21  original italics emphasis).

22      Similarly, in yet another case involving <u>particularly egregious</u>

23  circumstances arguably more heinous or atrocious than the facts involved in

24  this present case, the court again explained that continued reliance on

25  aggravating facts of the crime violated due process and no longer amounted

26  to "some evidence" supporting denial of parole. **In re Elkins**, (2006) 50 Cal.

27  Rptr.3d 503, like the Superior Court in **Rosenkrantz**, **Elkins**, cited

28  **Irons v. Warden**, (E.E. Cal. 2005) 358 F.Supp.2d 936. **Irons**, However, was

1  reversed March 6, 2007, by the Ninth Circuit, Case No. (05-15275), **Irons**

2  **v. Carey**, ___ F.3d ___ (9th Cir. 2007). Nevertheless, the **Biggs** principles

3  were upheld.

4      Many Federal Court's have also found **Biggs**, to correctly apply Supreme

5  Court due process principles: **Rosenkrantz v. Marshall**, (C.D. Cal. 2006)

6  444 F.Supp.2d 1063 ["nobody elected the BPT Commissioner's as sentencing

7  Judges."]; **Martin v. Marshall**, (N.D. Cal. 2006) 431 F.Supp.2d 1038, [The

8  Board has capitulated to the no-parole Policy, denial of parole under

9  California Governor's no parole policy for murderer's denied inmate his due

10  process right to be heard by an impartial decision-maker] (Citing **Coleman v.**

11  **Board of Prison Terms**, Case No. (96-0783 LKK PAN), (E.D. Cal. 2005);

12  **Sanchez v. Kane**, (C.D. Cal. 2006) 444 F.Supp.d 1049 [The parole satutes

13  do not vest the Governor with the power to re-sentence petitioner].

14      Some Federal Court's has considered **Sass v. Cal. Bd. of Prison Terms**, 461

15  F.3d 1123 (9tth Cir. 2006) as "backing away from **Bigg's**", relying on the

16  **Sass**, statement that "under the AEDPA it is not our function to speculate about

17  how future parole hearing could proceed." (**Sass**, 461 F.3d at 1129.) However,

18  as one District Court Judge put it:

19              "The **Sass** and **Biggs** decisions are not polar
20              opposites and can be harmonized: The BPT can
               look at immutable events, such as the nature
21              of the conviction offense and pre-conviction
               criminality, to predict that the prisoner is
22              not currently suitable for parole (**Sass**),
               but the weight to be attributed to those
23              immutable events decreases over time as a
               predictor of future dangerousness as the years
24              pass and the prisoner demonstrates favorable
               behavior (**Biggs**). The one way in which
25              **Sass** limits **Biggs** is to put to rest any idea
               that the commitment offense and pre-offense
26              behavior only support the initial denial of
               of parole. The immutable events may support
27              the decision to deny parole not just at the
               first parole consideration hearing but also
28              at subsequent hearings. However, **Sass** did

not dispute the principle that, other things being equal, a murder committed 50 years ago is less probative of a prisoner's current dangerousness than one committed 10 years ago. Not only does the passage of time count for somehing, exemplary behavior and rehabilitation in prison counts for something according to Biggs. Superintendent v. Hill's standard might be quite low, but it does require that the decision not be arbitrary, and reliance on only the facts of the crime might eventually make for an arbitrary decision.

Having determined that there is a due process right, and that some evidence is the evidentiary standard for judicial review, the next step is to look to state law to answer the question, 'some evidence of what?" (Jerome Thomas v. Jill Brown, (Warden)), Case No. (05-1332 MHP (N.D. Cal. 2006), pp. 5-6.

In that respect, Sass, failed to consider what "some evidence" must demonstrate, and what state law informs. (See Sass, Reinhardt, Circuit Judge, dissenting.) It is clear that both state and federal court's agree with Biggs and The United State Supreme Court due process principles Biggs relied on these are: Morrissey v. Brewer, 408 U.S. 471 (1972), Greenholtz, Allen, Hill, and Lankford v. Idaho, 500 U.S. 110 (1991) (Quoting Joint Anti-Fascist Refugee Comm. v. McGrah, 341 U.S. 123 (1951). As the Supreme court has explained, "rules of law may be sufficiently clear for Habeas purposes even when they are expressed in terms of a generalized standard rather than as a brightline rule." Williams v. Taylor, 529 U.S. 362, 382 (2000).

## ARGUMENT

### II.

RANSOM HAS A PROTECTED LIBERTY INTEREST IN PAROLE UNDER THE DUE PROCESS CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS; THUS, THIS COURT'S REVIEW MUST INCLUDE A DETERMINATION OF RANSOM'S DUE PROCESS RIGHTS.

10.

1

**A.**

2     RANSOM HAS A LIBERTY INTEREST IN PAROLE UNDER THE
DUE PROCESS CLAUSE OF THE UNITED STATES
3     CONSTITUTION.

4    Ransom  contends that this court's review is limited to ensuring "that the

5 procedural requirements imposed by state law are met and that the decision is

6 not arbitrary or capricious in nature." Ransom interprets this to mean the

7 court cannot reexamine the entire record or evidence but, merely decide

8 whether there is "any evidence" in the record that could support the

9 conclusion reached." This overly restrictive interpretation of the standard

10 of review ignores Ransom's federal and state constitutional rights of due

11 process in parole decisions. It also fails to credit the numberous state

12 court decisions clarifying that the "some evidence" test "is not whether some

13 evidence supports the reasons the [Board] cites for denying parole, but

14 whether some evidence indicates a parolee's release unreasonably endangers

15 public safety." (See **In re Elkins**, (2006) 144 Cal.App.4th 475, 521; **In re Lee**,

16 (2006) 143 Cal.App.4th 1400, 1408; accord **In re Barker**, (May 24, 2007) ___

17 Cal.App.4th ___ [2007 WL 1502277]; **In re Gray**, (May 24, 2007) ___ Cal.App.4th

18 ___ [2007 WL 1502288]; **In re Lawrence**, (May 22, 2007) ___ Cal.App.4th ___

19 [2007 WL 1475283]).

20    The Due Process Clause of the **Fourteenth** Amendment prohibits state action

21 that deprives a person of life, liberty, or property without due process of

22 law. (**U.S. Constitution 14th** Amendment.) A person alleging a due process

23 violation must first demonstrate that he or she was deprived of a liberty or

24 property interest protected by the due process clause and then show that the

25 procedures attendant upon the deprivation were not constitutionally sufficient.

26 (**Kentucky Dept. of Corrections v. Thompson**, (1989) 490 U.S. 454, 459-460;

27 **McQuillion v. Duncan**, (9th Cir. 2002) 306 F.3d 895, 900). The United States

28 Supreme Court recognizes a federal due process liberty in parole.

1  (Greenholtz v. Inmates of Nebraska Penal Complex, (1979) 442 U.S. 1, 7.) The

2  court held in 1979 and reaffirmed in 1987 that "a states statutory

3  scheme, if it uses mandatory language create a presumption that parole release

4  will be granted when or unless certain designated findings are made, and

5  thereby give rise to a constitutional liberty interest." (**Board of Pardons v.**

6  **Allen**, (1987) 482 U.S. 369, 373: Greenholtz, supra, 442 U.S. at p. 7).

7     Ransom acknowledges "[T]here is no constitutional or inherent right of a

8  convicted person to be conditionally released before the expiration of a valid

9  sentence." Greenholtz, supra. 442 U.S. at p. 7. However, "a state's statutory

10 scheme, if it uses mandatory language 'creates a presumption that parole

11 release will be granted' when or unless certain designated findings are made

12 and thereby gives rise to a constitutional liberty interest." **Allen**, 482 U.S.

13 at pp. 377–78; Greenholtz, supra, 442 U.S. at p. 12). The state statutory

14 Provision  governing parole hearings provides in pertinent part:

> "That the panel or Board, sitting en banc. shall set
> a release date unless it determines that the gravity
> of the current convicted offense or offenses ... is
> such that consideration of the public safety requires
> a more lengthy period of incarceration for this
> individual and that a parole date, therefore, cannot
> be fixed ..." (Penal Code, section § 3041 subd. (b)).

19    The Legislature's use of the words "Shall" and "Unless" makes the

20 provisions mandatory, thus conferring a liberty interest in parole hearings.

21 (See **Allen**, supra, 482 U.S. at p. 376; Greenholtz, supra, 442 U.S. at p. 11;

22 **Biggs v. Terhune**, (9th Cir. 2003) 334 F.3d 910, 914-915). Consequently, this

23 court's review includes ensuring compliance with Ransom's due process

24 rights under the federal constitution.

B.

26    RANSOM HAS A PROTECTED LIBERTY INTEREST UNDER THE
     DUE PROCESS CLAUSE OF THE CALIFORNIA CONSTITUTION
27    WHICH IS PROTECTED UNDER THE "SOME EVIDENCE"
     STANDARD OF REVIEW.

1    In addition to a cognizable liberty interest in release on parole under

2  the due process clause of the **United States Constitution**, an inmate's liberty

3  interest in parole is likewise protected under the broader due process

4  guarantees of the **California Constitution** (**Cal. Const.**, Art. 1, §§ 7. subd.

5  (a) is: **People v. Ramirez**, (1979) 25 Cal.3d 260, 266-269). The California

6  Supreme Court long ago recognized that freedom from arbitrary adjudicatives

7  procedures is a substantive component of an individual's liberty interests.

8  (**People v. Ramirez**, 25 Cal.3d at pp. 266, 269). In criticizing and rejecting

9  the restrictive federal aproach, which conditions due process protections on

10 statutorily created entitlements of liberty or property, our high court in

11 **Ramirez**, held "when an individual is subjected to deprivatory governmental

12 action, he always has a due process liberty interest both in fair and

13 unprejudiced decision-making and in being treated with respect and dignity.

14 (**Ibid.**) "Accordingly, the **California Constitution** recognizes a substantive

15 and procedural due process interest in parole. (**In re Rosenkrantz**, (2002) 29

16 Cal.4th 616, 676-677; **People v. Ramirez**, supra, 25 Cal.3d at p. 260; **In re**

17 **Powell**, (1988) 45 Cal.3d 894, 904.

18    Before an inmate may receive a parole date, the Board must find the inmate

19 suitable for parole. (**Penal Code**, § 3041; **Cal. Code of Regs. Tit. 15** §§ 2401,

20 2402). As with the parole hearing generally, the Board's parole finding must

21 comply with the requirements of constitutional due process. (**In re Rosenkrantz**,

22 supra, 29 Cal.4th at p. 655.) Due Process is satisfied if the Board's

23 assessment of the inmate's current risk of danger to the public if released

24 on parole is supported by "some evidence" in the record. (**In re Dannenberg**,

25 (2005) 34 Cal.4th 1061, 1091; see **Pen. Code**, § 3041 subd. (b)) Thus, the

26 California Supreme Court developed the "some evidence" rule to protect an

27 inmate's state based rights of due proecess. (**In re Dannenberg**, 34 Cal.4th at

28 p. 1091; **In re Rosenkrantz**, supra, 29 Cal.4th at pp. 676-677.

1  The "some evidence" standard comes from the United States Supreme Court's

2  decision in **Superintendent Massachusetts Correctional Institution Walpole v.**

3  **Hill**, (1985) 472 U.S. 445, wherein the high court address judicial review of

4  a prison disciplinary proceding. In balancing the prisoner's due process

5  right to a decision that is neither arbitrary nor capricious against the

6  institutions interest in running a safe prison, the court concluded that due

7  process minimally requires that the disciplinary Board's finding be supported

8  by "some evidence" in the record. (**Id**. at p. 454). Two years after the United

9  States Supreme Court established the "some evidence" standard.

10  The California Supreme Court imported the standard into parole Board decisions

11  rescinding grants of parole. **In re Powell**, supra, 45 Cal.3d 894, our high

12  court held for the first time that parole decisions must comport with due

13  procces, and that due pocess is met if there is "some evidence" in the

14  record" supporting the decision. (**Id**, at p. 904).

15  In 2002, the California Supreme Court applied the "some evidnece " standard

16  to parole suitability hearings in **In re Rosenkrantz**, supra, 29 Cal.4th 616.

17  The state high court began by acknowledging the Board's broad discretion in

18  rendering parole suitability decisions and that appellate courts cannot apply

19  a de novo standard of review to such decisions (**Id**, at p. 679; **In re** Dannenber

20  **Dannenberg**, 34 Cal.4th at p. 1082). While acknowledging this deferential

21  standard of review the **Rosenkrantz**, court admonished that judicial   review

22  of Board decision is not merely Pro Forma. In reviewing a Board's decision

23  that an inmate is unsuitable for parole. "The Judicial branch is authorized

24  to review the factual basis of a decision of the Board denying parole in

25  order to ensure that the decision comports with the requirements of due

26  process of law." (**In re Rosenkrantz**, supra, 29 Cal.4th at p. 658). The

27  decsion comports with due process if there is "some evidence" in the

28  record before the Board supports the decision to deny parole, based on the

14.

1  factors specified by statute and regulations (Id., at p. 658).

2    Court's also must ensure that the evidence relied on by the Board in

3  meeting the "some evidence" standard is both reliable and of a solid value.

4  (Id., at p. 655; see Cal. Code of Regs., Tit. 15 §§ 2402, subd. (b), 2281

5  subd. (b); see also In re Scott, (2005) 133 Cal.4th 573, 591). It is not

6  sufficient for the Board derive finding from a silent or misconstued record.

7  Reviewing court's additionally must determine if the Board gave the inmate

8  "individualized consideration of all relevant factors' and that the Board's

9  conclusions was neither arbitrary nor capricious. In re Rosenkrantz, supra

10  29 Cal.4th at p. 655; In re DeLuna, (2005) 126 Cal.App.4th 585; see U.S.

11  Const. 5th, 14th Amendments; Cal. Const. Article I, § 7. subd. (a)).

12    The  applicable statutes and regulations provide six non-exclusive

13  circumstances tending to show parole unsuitability and nine circumstances

14  tending to show suitability. (Cal. Code of Regs, Tit. 15 § 2402, subd. (c),

15  (d); In re Rosenkrantz, supra, 29 Cal.4th at pp. 653, 654; In re Scott,

16  (2004) 119 Cal.App.4th 871, 888, 897). The Circumstances Tending to Show

17  Unsuitability include:

18      (c) Circumstances tending to show unsuitability. The
           following circumstances each tend to indicate
19         unsuitability for release. These circumstances are
           set forth as general guidelines. The importance
20         attached to any circumstance or combination of
           circumstances in a particular case is left to
21         the judgement of the panel.

22      (1) The Commitment Offense. The prisoner committed
           the offense in an especially heinous, atrocious
23         or cruel manner. The factors to be considered
           include:

24
25      (A) Multiple victims were attacked injured or
           killed in the same or separate incidents.
26      (B) The offense was carried out in a
           disspassionate and calculated manner, such
           as an execution-style murder.
27      (C) The victim was abused, defied or mutilated
           during or after the offense.
28      (D) The offense was carried out in a manner

15.

which demonstrates an exceptionally
callous disregard for human suffering.

   (D) The motive for the crime is inexplicable
or very trivial in relation to the offense.

(2) Previous Record of Violence: The prisoner on
previous occasions inflicted or attempted to
inflict serious injury on a victim. Particularly
if the prisoner demonstrated serious assaultive
behavior at an early age.

(3) Unstable Social History: The prisoner has a histoy
unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses: The prisoner has
previously sexually assaulted another in a manner
calculated to inflict unusual pain or fear upon
the victim.

(5) Psychological Factors: The prisoner has a lengthy
history of severe mental problems related to the
offense.

(6) Institutional Behavior: The prisoner has engaged
in serious misconduct in prison or jail. (Cal. Code
of Regs., Tit. 15, § 2402, subd. (c); In re
Rosendrantz, supra, 29 Cal.4th at pp. 653–654).

The Circumstances Tending to Show Parole Suitability include:

(d) Circumstances tending to show suitability. The
following circumstances each tend to show that the
prisoner is suitable for release. The circumstances
are set fourth as general guidelines. The importance
attached to any circumstances or combination of
circumstances in a particular case is left to the
judgment of the panel.

(1) No Juvenile Record: The prisoner does not have
a record of assaulting others as a juvenile or
commiting crimes with a potential of personal
harm to victims.

(2) Stable Social Hisory: The prisoner has experienced
reasonably stable relationships with others.

(3) Signs of Remorse: The prisoner performed acts which
tend to indicate the presence of remorse, such
as attempting to repair the damage, seeking help
for or relieving suffering of the vicim, or
indicating that he understands the nature and
magnitude of the offense.

(4) Motivation for crime: The prisoner committed
his crime as the result of significant stress
in his life, especially if the stress has built
over a long period of time.

(5) Battered Woman Syndrome: At the time of the
commission of the crime, the prisoner suffered
from battered women syndrone, as defined in
section § 2000(b), and it appears the
criminal behavior was the result of that
victimization.

16.

1         (6) <u>Lack of Criminal History:</u> The prisoner lacks
           any significant history of violent crimes.

2         (7) <u>Age:</u> The prisoner's present age reduces the
           probability of recidivism.

3         (8) <u>Understanding and plans for the future:</u> The
           prisoner has made realistic plans for release

4             or has developed marketable skills that can
           be put to use upon release.

5         (9) <u>Institutional Behavior:</u> Institutional activities
           indicate an enhanced ability to function within

6             the law upon release.

7  (<b>Cal. Code of Regs, Tit. 15</b>, § 2402, subd. (b); <u>In re Rosenkrantz</u>,

8  <u>supra</u>, 29 Cal.4th at pp. 653–654).

9      Circumstances (1),(2), and (4) reasonably reflect the sole specified

10  and authorized statutory exception to <b>Penal Code</b>, § 3041(a) to setting

11  parole release dates. The current or past conviction offense. Factor (E)

12  of circumstance (1) however, pertaining to the motive for the crime being

13  inexplicable and trivial, although typically stated by the Board as a

14  factor for denying parole, is a rare circumstance, as there is almost

15  always, as here an explanation as to why the offense occurred. Whether

16  the motive was trivial is another matter, as one court noted:

17        "The epistemological and ethical problems involved in
      ascertainment and evaluation of motive are among the

18        reasons the law has sought to avoid the subject. As
      one authority has stated "[hardly] any part of

19        Penal Law is more settled than that motive is
      irrelevant. (Hall, General Principles of Criminal

20        Law (2d Ed. 1960) at p. 88; see also Husak, Motive
      and Criminal Liability (1989) Vol. 8, No. 1.

21        Crim. Justice Ethics 3)."

22  The Court further explained:

23        "The offense committed by most prisoners serving
      life sentences is, of course murder. Given the

24        high value our society places upon life, there is
      is no motive for unlawfully taking the life of

25        another human being that could not be deemed
      "Trivial." The legislature has foreclosed that

26        approach, however, by declaring that murderers
      with life sentences must "<u>Normally</u>" be given

27        release dates when they approach their minimum
      eleigible release date. (<b>Penal Code</b>, § 3041,

28        subd. (a): <u>In re Scott</u>, 119 Cal.4th 871, 892–893).

17.

1    It is therefore questionable whether the factor has any evidentiary

2  value in the case, if the motive was indeed inexplicable "A person whose

3  motive for a criminal act that cannot be explained or is unintelligible

4  is therefore unusally and unpredictable and dangerous." Such is not the

5  case here. The Board's decision on this ground was arbitrary and

6  capricious.

7    The uncontroverted facts of the commitment offense are that Ransom went

8  to the house of Artur Chappell to settle a difference and to retrieve

9  his drugs. Which were under the ice box. Ransom  dropped the aluminum

10 bottom to the ice box awaking Mr. Chappell, who startled Ransom and in

11 fear Ransom fired one shot killing Mr. Chappell instantly.

12   There is no evidence in the record that this "offense was carried out

13 in a manner which demonstrates an exceptionally callous disregard for

14 human suffering" or the offense was "inexplicable" and "very trivial."

15   The primary circumstances and factors considered to make the

16 unsuitable determination (**Cal. Code of Regs., Tit. 15**, § 2402(c)-(1)-(B)-

17 (D) **and** (E)) have been explained by the court's. To qualify for the

18 authorized exception in **Penal Code**, § 3041(b) the offense must be

19 "exceptionally egregious." The Court of Appeals explained and

20 characterized this as follows:

21       "**In re Van Houten**, (2004) 116 Cal.App.4th 339
         [10 Cal.Rptr.3d 406] illustrates the sort of
22       gratuitous cruelty required. The prisoner in
         this case was involved in multiple stabbings
23       of a woman with a knife and bayonet. While
         she was dying. The victim was made aware her
24       husband was suffering a similarly gruesome
         fate. As stated by the court. '[T]hese acts
25       of cruelty far exceed the minimum necessary
         to stab a victim to death.' (**Id**., at p. 351).
26       Other examples of aggravated conduct
         reflecting an 'exceptionally callous
27       disregard for human suffering.' Are set
         forth in the Board's regulations  relating
28       to the matrix used to set base terms for

18.

life prisoners (§ 2402, subd. (b); § 2282, subd. (b):
namely "Torture." As where the "[V]ictim was subjected
to prolonged infliction of physical pain through the
use of non-deadly force prior to act resulting in
death." And "severe trauma." As where "[d]eath
resulted from severe trauma inflicted with deadly
intensity; e.g., beating, clubbing, stabbing,
strangulation, suffocation, burning, multiple wounds
inflicted with a weapon not resulting in immediate
death or actions calculated to induce terror in the
victim." (In re Scott, (2004) 119 Cal.App.4th 871, 891).

As in **Scott**, "No such facts or anything remotely similar are present in Ransom's case. To permit Ransom's motive to be used to deny him parole, makes a mockery of the Legislative declaration that life prisoenr's are "normally" entitled to receive a release date shortly before they first become eligible for parole. (**Penal Code,** § 3041(a)).To allow this denial to stand on these unsupported factors is a violation of Ransom's due process rights and his liberty interest in parole.

Circumstance (3) of the unsuitability factors (**Cal. Code of Regs., Tit. 15** § 2402(c)-(3) "Unstable Social History." is inapplicable here, where Ransom has demonstrated stable relationships with others since incarceration, nor is there a nexus between any pre-convicted history and a current threat to public safety in this case. Furthermore, there is no reliable evidence showing Ransom "had a history of unstable or tumultuous relationships with others."

Circumstance (5) of the unsuitability factors "Psychological Factors." The prisoner has a lengthy history of severe mental problems related to the offense, is not applicable in this case as the psychological evaluation report indicates, as do previous reports by different mental health experts and recent reports, none of whom have recommended that Ransom participate in or need "Therapy" (**Cal. Code of Regs., Tit. 15** § 2402(c)-(5).

Circumstance (6) of the unsuitability factors "Institutional Behavior." The prisoner has engaged in serious misconduct in prison or jail. While it may be reasonable to deny credit pursuant to (**Cal. Code of Regs, Tit. 15** § 2410). While providing for the granting or denial of "Post-Conviction Credits." To

**19.**

1    indeterminately sentenced prisoners. This factor should not be used as a substitute

2    for a statutory provision which specifies "only" the gravity of the current or a past

3    conviction offense as grounds for withholding setting of parole terms.

4    It is a rare prisoner that does not incur at least one "Serious Rule Violation

5    CDC-Form-115" (SRV) in the course of serving ten or more years. The question should

6    be whether the (SRV) is of such magnitude that it reasonably supports a conclusion

7    that a prisoner therefore poses an unreasonable threat to public safety. If the

8    controlling statute specifies only the gravity of a past or present convicted

9    offense, and the regulations provide sanctions for (SRV), Ransom submits that

10   denial of parole for any (SRV) is insufficient and it does not show that Ransom

11   presents a current threat to public safety if released from prison after serving

12   (23) years in prison. Simply identifying "some evidence" in the record to support

13   each result cannot shield the Board from invocation of the some evidence standard.

14   (Cal. Code of Regs., Tit. 15 § 2402(c)-(6).

15   Penal Code, section § 3041, subd. (b) specifically provides that the Board set

16   prisoners terms at their initial parole consideration hearing:

17           "Unless it determines that the gravity of the current convicted
             offense or the timing and gravity of current or past convicted
18           offense or offenses, is such that consideration of public
             safety requires a more lengthy period of incarceration for this
19           individual, and that a parole date, therefore cannot be fixed
             at this meeting."

20

21   The statute does not authorize denial of parole for any other reason. Ransom,

22   however, was denied parole because of "Serious Rule Violation  Misconduct" years

23   in the past; in addition to the offense and prior conduct. It has previously been

24   explained that evidence given is support of the determiantion that a  prisoner's

25   release unreasonably endangers public safety must also have an "indicia of

26   reliability." Jancsek v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992). The Court

27   in (In re Morrall, (2002) 125 Cal.Rptr.2d 391: "To constitute 'some evidence' the

28   information relied upon by the Governor must tend logically, and by reasonable

1  inference, to establish a fact relevant to the inmate's suitability for parole."

2  (Id., at p. 407) In re Scott, (2005) 34 Cal.Rptr. 905, explained that the

3  predictive value of the commitment offense may be very questionable after a long

4  period of time. (Id., at P. 920). This is no less true for serious rule violation

5  misconduct years in the past. It is also unreasonable to substitute a rule violation,

6  especially one not involving violence, for the statutorily authorized reason, to

7  deny parole. All prisoner's should receive similar punishment for similar rule

8  violations. The Board Abused its Discretion by denying parole repeatedly for which

9  misconduct other prisoners only suffer the loss of a few months of credits: which

10  can be restored after six-months of disciplinary-free conduct. In effect, the Board

11  has denied parole repeatedly because Ransom was not instantaneously rehabilitated

12  by and upon incarceration.

13  One court stated: "With respect to petitioner's disciplinary violations, there

14  is significant evidence in the record of petitioner's positive institutional behavior

15  which reasonably mitigates the effect that petitioner's past violations have on his

16  suitability. Martin v. Marshall, (N.D. Cal. 2006) 431 F.Supp.2d 1038. The prisoner

17  had (20) disciplinary rule violation  reports, including for possession of drugs,

18  weapons materials, and gambling paraphernalia. He had also been stabbed three times

19  between 1987 and 1990 for involvement with loan sharks. However, Martin, had not

20  received any since 1995. Ransom has been disciplinary free since 1995. The

21  disciplinary rule violation the Board relied on in Ransom case or (12) years in the

22  past. This disciplinary rule violations from Ransom's past does not show that he

23  is currently dangerous to society to prevent the setting of a parole date.

24  Evidence of Ransom's positive institutional behavior, are as follows and

25  contradicts the Board claims that Ransom's gains are recent:

26  (1991) successfully completed (A.B.E.-II) Adult Basic Education.

27  (1992) successfully completed and attained my "GED".

28  (1992) Certificate received for achievement in the Juvenile Diversion Program.

1   (1993) successfully completed Training in Milk Processing and was issued a
2   California Pasterizer General Licence.

3   (1993) certificate of achievement for Narcotics Anonymous.

4   (1994) successfully completed the "12-Steps on Narcotic Anonymous and continued
5   to participate to the present.

6   (1994) successfully completed "Literacy Life Skills Self-Help Program."

7   (1995) issued a Chrono from Supervisor in Milk Processing Training.

8   (1996) issued a Chrono from Supervisor in Milk Processing Training.

9   (1996) sucessfully completed "Literacy Life Skills Self-Help Program."

10  (1996) participated in the Corcoran Prison Basketball Tournament Championship
11  (2nd Place).

12  (1996) certificate received for participation in the Path of Peace, a twelve step
13  recovery program for problems associated with addictions.

14  (1997) successfully completed "Orientation  Shop and Safety for Electronics and
15  Computer Repair Program."

16  (1997) successfuly completed the Parent Education Program.

17  (1998) successfully completed "Friends outside Parenting Class."

18  (1998) issued a Certificate for perfect attendance for the "Parenting Class."

19  (1998) successfully completed "The Entrepreneur Development Program."

20  (1998) issued a Chrono / Letter from the instructor of the "Entrepreneur
21  Development Program."

22  (1998) certificate received for completion of the Century 21 Real Estate course,
23  No. (KG-525).

24  (1998) successfully participated  in the Principles of Alcoholics Anonymous and
25  Narcotics Anonymous Program.

26  (1998) successfully completed a (20-week) college level Executive Business
27  Administration course: consisting of the Principles of Management, Marketing,
28  Accounting, Financing, Decision Making, and Human Resources, certificate rece.

1    (1999) Correctional Counselor (CC-I), issued and placed a Chrono in my Central

2        File (C-File) stating that the (C.D.C.R.) no longer considers Ransom an

3        "Active Gang Member".

4    (1999) successfully participated in Narcotic Anonymous.

5    (2000) successfully completed the Peer Education Program for instruction in

6        "Tuberculosis Prevention ."

7    (2000) successfully completed the Peer Education Program for instruction  in

8        "Hepatitis Prevention."

9    (2000) successfully completed the Peer Education Program for instruction in

10        "Sexually Transmitted Diseases and Prevention."

11    (2000) successfully completed the Peer Education Program for instruction in

12        "HIV-Aids Prevention."

13    (2000) successfully participated in Narcotic Anonymous.

14    (2001) Completed in the William James & Association "Art Competion."

15    (2001) successfully completed "M.O.T.M.-Meeting of the minds Program."

16    (2001) participated in the Soledad Prison Basketball Tournament Chsampionship

17        3-on-3 (2nd Place).

18    (2001) successfully completed a course in the cause, prevention, treatment and

19        management of Hepatitis. Certificate received No. (C-1944).

20    (2001) successfully completed a course in the cause, prevention, treatment and

21        management of Sexually Transmitted Disease. Certificate received

22        No. (C-1883).

23    (2002) successfully completed a course in the cause, prevention, treatment and

24        management of HIV/AIDS. Certificate received No. (C-2008).

25    (2002) successfully participated in Narcotic Anonymous.

26    (2002) successfully completed Anger Management course.

27    (2002) certificate received for completion of the Vocational Graphic Arts/ Offset

28        Printing.

23.

(2002) certificate of completion of the Amity Foundation of California subjects
included: Domestic Violence, Substance Abuse related behavior, Family Cycles
and Violence, and identifying messages received from the family.

(2002) certificate of completion of the Amity Foundation East Lodge.

(2003) successfully completed the Emergency Management Program with FEMA for
"Decision Making & Problem Solving."

(2003) successfully completed the Emergency Managemet Program with FEMA for
"Effective Communication."

(2003) successfully completed the Emergency Management Program with FEMA for
"A Citizen's Guide to Disaster Assistance."

(2003) successfully completed the Emergency Management Program with FEMA, for
"Building for the Earthquakes of tomorrow."

(2003) successfully completed the Emergency Management Program with FEMA, for
"Animals in Disaster: Awareness and Preparedness."

(2003) successfully completed the Emergency Management Program with FEMA, for
"Animals in Disaster: Community Planning."

(2003) received a positive Laudatory Chrono from Correctional Staff stating that
Ransom has consistently been exceptional with positive work ethics, and
has encourge and helped others to refrain from associations or involvement
in activities that could contribute to creating a negative prison environment.
In addition, he has displayed a positive role model for younger inmates.

(2003) successfully trained on the propery operation of the Upright, Model U133,
Hydraulic Lift. This included assembly, operation, disassembly, and safety
features of the unit.

(2003) successfully completed a series of lectures entitled: How to become a
Father, and not to get angry. Certificate received.

(2003) successfully participated in Narcotic Anonymous.

(2003) Certificate received for completion of the Parent Education Program,
No. (BA-264).

24.

1  (2004) successfully completed the Emergency Management Program with FEMA, for
2      "Emergency Program Manager."
3  (2004) successfully completed the Emergency Management Program with FEMA, for
4      "Emergency Preparedness  U.S.A.."
5  (2004) successfully completed  the Emergency Management Program with FEMA, for
6      "Retrofitting Floor Prone Residential Structures."
7  (2004) successfully completed the Emergency Management Program with FEMA, for
8      "Mitigation for Homeowners."
9  (2004) successfully completed the Emergency Management Program with FEMA, for
10     "Introduction into Mitigation."
11 (2004) successfully completed the Emergency Management Program with FEMA, for
12     "Incident Command System."
13 (2004) successfuly completed the Emergency Management Program with FEMA, for
14     "Livestock. in Disasters."
15 (2004) successfully completed Dr. Thomas Gordon's Family effectivenes Train /
16     Harmony in the Home Program.
17 (2006) successfully completed Alternative to Violence Project (AVP).
18 (2006) successfully completed Balanced Re-Entry Activity Group (BRAG).
19 (2006) still an active  member of Narcotics Anonymous
20 (2006) successfully completed Training in Haircutting safety and sanitation procedures.
21 (2007) successfully completed the Peer Education Program for instruction in
22     "HIV-AID Prevention."
23 (2007) successfully completed the Emergency Management Program with FEMA, for
24     "Introduction to Residential  Contruction."
25 (2007) successfully completed the Emergency Management Program with FEMA, for
26     "Principle of Emergency Management."
27 (2007) successfully completed the Emergency Management Program with FEMA, for
28     "Role of voluntary agencies in Emergency Management ."

25

1  (2007) successfully completed the Emergency Managemnet Program with FEMA, for

2  "Developing and Managing Volunteers."

3  (2007) successfully completed the Emergency Management Program with FEMA, for

4  "Hazardous Material for Medical Personnel."

5  (2007) successfully completed the Emergency Management Program with FEMA, for

6  "Role of the Emergency Operation Center in Community Preparedness, Response

7  and Recovery."

8  (2007) successfully completed the Emergency Management Program with FEMA, for

9  "Exercise Design."

10  (2007) successfully completed the Emergency Management Program with FEMA, for

11  "An Orientation to Community Disaster Exercises."

12  (2007) successfully completed the Emergency Management Program with FEMA, for

13  "An Introduction to Hazardous Materials."

14  (2007) successfully completed the Emergency Management Program with FEMA, for

15  "Radiological Emergency Management."

16  (2007) successfully completed the Emergency Management Program with FEMA, for

17  "State Disaster Management."

18  (2007) successfully completed the Emergency Management Program with FEMA, for

19  "Emergency Planning." Training as a Welder, Maintenance Engineer, Laboratory

20  Technician, Textile Manufactuer, Clerk, Culinary Cook, Porter, Barber,

21  Computer Repairer and Quality Control (Milk Processing); (see the Original

22  Habeas Corpus at P. 4-6). (Respondent's Lodgment # 5, Writ of Habeas Corpus).

23  ARGUMENT

24  III.

25  THE BOARD'S PAROLE DENIAL IGNORED THE FACTORS
   DEMONSTRATING RANSOM'S "SUITABILITY" FOR
26  PAROLE.

27  All relevant, reliable information available to the Panel shall be considered in

28  determining suitability for parole. (Cal. Code of Regs., Tit. 15 § 2402, subd. (d)

emphasis added) The Board ignored the findings of the Psychological Evaluation regarding Ransom's violence potential and no need for therapy. The Board's failure to consider such information available to it thus violates, this section. The Board also failed to find that several other factors favored suitability as required by subdivision (d) of section § 2402. Ransom had a stable social history, Ransom continues to enjoy strong family support and community support.

Ransom has shown consistent, genuine signs of remorse for his crimes, for the victim and for both the victim's family and Ransom's own family (Cal. Code of Regs., Tit. 15, § 2402(d)-(3).

The crime was committed at an extremely young age of (23) over (23) years ago. Ransom is now (48) years old and has matured considerably. (Cal. Code f Regs., Tit 15, § 2402(d)-(7). Ransom has made very realistic Parole Plans for release. Ransom has a place to live and several Job offer's and additional assistance from family and friends. (Cal. Code of Regs., Tit. 15 § 2402(d)-(8); see Respondent's Lodgment # 4, and Ransom's Exhibit "C", Letter's of Support for his release to the Community. Lastly, Ransom's institutional activities (i.e., Ransom's substantial participation in Self-Help Programming and development of Marketable Skills), clearly indicates an enhanced ability to function within the law upon release. (Cal. Code of Regs., Tit. 15 § 2402(d)-(9).

In Ramirez, supra, 94 Cal.App.4th 549, as in this case, the Board denied a parole release date on the basis of a finding that the nature of the inmate's offense displayed a callous disregard for huamn suffering. (Id. at pp. 558, 568). Setting aside that determination , the court agreed that "The gravity of the commitment offense or offenses alone may be a sufficient basis for denying a parole date, so long as the Board does not fail to consider all relevant factors." (Id., at p. 569). It is clear, that the Board failed to consider all relevant factors. of their own regulations (§ 2402, subd. (d))

27.

Did Ransom gratuitously increased or unnecessarily polonged his victim pain
and suffering? "No", are the facts of the crime some evidence that Ransom, acted
with except brally or especially callous disregard for his victim suffering: or do
the facts distinguish Ransom's crime from other second degree murderer's exceptionally
or especially callous and cruel? The relevant evidence shows no more cruelty or
callous disregard for human suffering than is shown by most second degree murder
offense. The Board's use of this factor to conclude that Ransom committed his offense
"in an exceptionally callous disregard for human suffering" and was "inexplicable"
or "very trivial.", is arbitrary and capricious and without evidence to support
that conclusion in light of the facts presented. The California Legislature has
clearly expressed its intent that when murders - who are the great majority of
inmate's serving indeterminate sentences approach their minimum eligible parole
date  the Board "shall normally" set a parole release date. (**Penal Code**, section
§ 3041, subd. (a).

**ARGUMENT**

**IV.**

**NO EVIDENCE SUPPORTS THE BOARD'S CONCLUSION THAT
RANSOM POSES A "CURRENT UNREASOANBLE" THREAT TO
PUBLIC SAFETY.**

**While** the offense alone may initially be sufficient to justify denial of parole
where "particularly egregious" circumstances are involved, the circumstances
involved in this case "were more common place than egregious."

The Federal Courts have expressed grave concern of the potential for due process
violations in applying the "some evidence" standard to immutable parole factors.
In the landmark decision of **Biggs v. Terhune**, supra, 334 F.3d at p. 917). The
defendant in **Biggs**, was convicted of murdering a potential witness in an unrelated
criminal case. He and his co-conspirators deceived the victim into thinking they
were taking him out of state, then bludgoning  him to death (**Id.** at P. 916).

28.

1  Although **Biggs**, was a model inmate in Prison, he was found unsuitable for parole

2  based on the hideous character of the commitment offense. (**Ibid**) Although upholding

3  the denial of parole. The Ninth Circuit made it unmistakably clear  that it would

4  not tolerate repeated parole denials on factors the inmate could not change. The

5  court expressly found that inmates have a due process liberty interest in parole,

6  and that this interest is infringed by repeated denials based on immutable factors.

7  (**Id**., at pp. 914-915 [citing **Allen**, supra 482 U.S. at p. 373: **Greenholtz**, supra,

8  442 U.S. at pp. &, 11-12.) In the words of the courts:

9      "We must be ever cognizant that due process is not a mechanical
        instrument. It is not a yardstick. It is a process. It is a
10     delicate process of adjustment inescapably involving the
        exercise of judgment by those whom the constitution entrusted
11     with the unfolding of the process. A continued relieance in
        the future on an unchanging factor, the circumstance of  the
12     offense and conduct prior to imprisonment, runs con tary to
        the rehabilitative goals exposed  by the prison system and
13     could result in a due process violation (**Biggs v. Terhune**, supra,
        334 F.3d at pp. 916-917).

14

15  Adopting the **Biggs**, reasoning, the federal district court, Central District

16  of California, reversed the parole unsuitability finding in the **Rosenkrantz** case

17  and ordered Mr. **Rosenkrantz**, was convicted of murdering the friend of his younger

18  brother who had revealed Mr. **Rosenkrantz's** homosexuality. Over his nearly twenty

19  years of incarceration, he was a model inmate whom all agreed had reformed himself.

20  The District Court found that the Board's repeated parole denials based on the

21  gravity of the commitment offense amounted to a denial of due process. (**Id**., at

22  p. 1070) The Court reasoned in pertinent Parts:

23      "While relying upon petitioners crime as an indicator
        of his dangerousness may be reasonable for some period
24     of time, in this case, continued reliance on such
        unchanging circumsances — after nearly two decades of
25     incarceration and half a dozen parole suitability
        hearings – violates due process because petitioner's
26     commitment offese has become such an unreliable
        predictions of his present and future dangerousness
27     that it does not satisfy the 'some evidence' standard.
        After nearly twenty years of rehabilitation  the

28

29.

ability to predict a prisoner's future dangerousness based
simply on the circumstnaces of his or her crime is nil ...
Furthermore, the general unreliability of predicting
violence is exacerbated in this case by several facts,
including petitioner's young age at the time of the offense,
the passage of nearly twenty years since that offense was
committed, and the fact that all of the evidnece in the
record clearly indicates that petitioner is suitable for
parole. (**Id.**, at pp. 1084-1085)."

Another instructive case is **Irons v. Warden of California State Prison-Solano**,

(E. D. Cal. 2005) 358 F.Supp.2d 936. In **Irons**, the defendant was serving 17-Years-

To-Life after a first degree murder conviction arising from his killing a fellow

tenant following a verbal altercation. The defendant loaded a handgun, went to

the victim's room, fired (12) rounds into him, said he going to let him bleed to

death and when the victim complained of the pain, took out a buck knife and stabbed

him in the back. (**Id**, at pp. 940-941). The Board found him unsuitable for parole at

this fifth parole hearing (**Id**, at p. 939). It did so based on the facts of the

commitment offense and the defendant's substance abuse at the time of the murder.

(**Id.**, at pp. (39-947). Like the Central District in **Rosenkrantz** the Eastern District

in **Irons**, took to heart the **Biggs**, admonition that continued reliance on unchangable

factors raises a due process violation. The court admonished that the continuous

reliance on unchanging circumstances:

"[T]ransformed an offense for which California Law
provides eligibility for parole into a de facto
life imprisonment without the possibility of parole
..... The circumstnaces of the crimes will always
be what they were, and petitioner's motive for
commiting them will always be trivial. Petitioner
has no hope for ever obtaining Parole except
perhaps that a panel in the future will arbitrarily
hold that the circumstances were not that serious
or the motive was more than trivial."

The court aptly reasoned, "to a point, it is true [That] the circumstances of

the crime and motivation for it may indicate a petitiioner's unstabiltiy, cruelty,

impulsiveness, violent tendencies and the like. However, after fifteen or so years

in the caldron of prison life, not exactly an ideal therapeutic environment to say the least, and after repeated demonstrations that despite the recognized hardships of prison, this petitioner does not possess those attributes, the predictive ability of the circumstances of the criems is near zero" (**Irons**, **supra**, 358 F.Supp.2d at p. 947 fn. 2). **Irons**, however, was reversed March 6, 2007 by the Ninth Circuit case No. (05-15275); **Irons v. Carey** ___ F.3d ___ (9th Cir. 2007). Nevertheless, the **Biggs**" principles were upheld.

The rule to be drawn was a consideration of these cases is that the "some evidence" rule requires more than a mere modicum of evidence supporting the Board's ultimate decision to deny parole. Due Process requires that a decision to deny parole be supported by "some evidence" the inmate's release unreasonably endangers public safety because he's a <u>current</u> threat.

**ARGUMENT**

**V.**

**THE BOARD'S REFUSAL TO RELEASE RANSOM ON PAROLE
IS AN UNLAWFUL, UNGUIDED ABUSE OF IT'S DISCRETION.**

The trial court does not fix the period of confinemnt for prisoners convicted of murder and sentenced to prison for a certain minimum term (e.g. 15-years-to-life) with the possibility of parole. (See **Penal Code**, § 190(a) and § 1168, subd. (b)) Instead, the Board is authorized to determine whether and when such prisoners are released from prison. (**Penal Code**, § 3040). In order to prevent the unguided abuse of discretion condemned by the California Supreme Court in **In re Rodriguez**, (1975) 14 Cal.3d 639. The Board developed guidelines for setting terms of imprisonment for specific crimes. These guidelines are commonly referred to as the "Matrix." See (**Cal. Code of Regs., Tit. 15** § 2403, subd. (c)) **Rodriguez**, held unconstitutional the parole authority's practice of setting the terms of indeterminately sentenced prisoners at the maximum, which was life. Holding that its obligation to "assure that

31.

1  the indeterminate sentence law is properly adminstered .. is not limited to

2  consideration of procedural due process alone." The court found that the petitioner's

3  life sentence was excessive and disproportionate and order him released from

4  custody. (Rodriguez, at pp. 649, 650). Thereafter, the parole Board adopted the

5  Matrix to guide the commissioner's discretion when seting terms. (**Cal. Code of**

6  **Regs., Tit. 15** § 2403).

7      Under the Matrix, Ransom's base term of confinment should be set at roughly

8  (19) years see (**Cal. Code of Regs, Tit. 15**, § 2403, subd. (c)-(III)-(B), [18,19 and

9  20 years where prisoner directly killed the victim with whom he had no prior

10  relationship].) At the time of the 2005 Parole Hearing, Ransom had served (22)

11  actual years in prison. Had the Board properly granted Ransom parole and credited

12  Ransom with the customary four (4) months of credits toward his sentence for each

13  year he actually served. Ransom would earn an additional (88) months, or seven (7)

14  years and four (4) months. Ransom total period of incarceration at that point would

15  have been (29) years and four (4) months, well beyond the (18, 19 and 20 years)

16  established by the matrix.

17      The Board has not advanced any reason, nor is there one  in the record for exceeding

18  the matrix in this case. Since the matrix takes into account the circumstances of

19  the commitment offense in setting the Base Term, there is no basis for setting the

20  term beyond that provided by the matrix unless the crime was especially heinous or

21  particularly egregious; which this case was not. Indeed, beyond the guidance provided

22  by the matrix, any other term based on the detail  of the crime – which will

23  never change would be arbitrary. See (**Biggs v. Terhune**), under **Rodriguez**, Ransom

24  (17) years  of positive institutional conduct cannot be disregarded in fact, those

25  years must weigh more heavily than the commitment offense, particularly when the

26  crime is not "especially heinous" or "egregious." **In re Rodriguez**, supra, 14 Cal.3d

27  at p. 652). Absent any reasonable basis for Ransom term at anything beyond that

28

1  provided in the matrix, Ransom must be released from custody. Otherwise, the Board

2  will  be allowed the same type of unguided abuse of discretion expressly condemned

3  in **Rodriguez**, supra 14 Cal.3d 639.

4                                    **CONCLUSION**

5      There is no evidence supporting the Board's conclusion that Ransom committed the

6  offense   in an especially heinous, atrocious  , egregious or cruel manner, or that

7  Ransom continues to pose an unreasonable threat  to public safety. Like Robert

8  **Rosenkrantz**, Ransom has served more than sufficient time to be eligible  for parole

9  had he been convicted of first degree murder. The Board's denial of Ransom  parole

10 was, according to both state and federal law. "Otherwise arbitrary," unreasonable

11 and unconstitutional Ransom respectfully requests that this court grant his  Petition

12 and order his release from prison forthwith.

13

14 **Date:** January 3, 2008                    Respectfully  submitted,

15

16                                             Darryl Ransom
                                               (Petitioner)

17                                             IN  PRO  SE

18

19

20

21

22

23

24

25

26

27

28                                    **33.**

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
#### (C.C.P. §§ 1013(A), 2015,5)

I, **Darryl Ransom** _____, declare:

I am over 18 years of age and I am party to this action.  I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California.  My prison address is:

**Darryl Ransom** _____, CDCR #: **E-40704** _____
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: **(FW-315-Up)**
SOLEDAD, CA  93960-0689.

On **January 3, 2008** _____, I served the attached:

**TRAVERSE IN REPLY TO RESPONDENTS ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS:**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined.  The envelope was addressed as follows:

United States District Court
For the Central District of California
312 N. Spring, Street.
Civil Section, Room G-8
Los Angeles, California.  90012

Department of Justice
Office of the Attorney General
110 W. "A", Street, Suite #: (1100)
P. O. Box 85266
San Diego, California. 92186-5266

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **January 3, 2008** _____.

_Darryl Ransom_ _____

**Darryl Ransom** _____
Declarant