IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DARRYL RANSOM,

    Petitioner,

  v.

BEN CURRY, Warden,

    Respondent.
_____/

No. CV 08-3571 CW

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

(Docket No. 28)

## INTRODUCTION

Petitioner, a pro se state prisoner, filed this petition in 2007 pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2005 finding by the California Board of Parole Hearings (Board) that he is unsuitable for parole.[1] For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 1983, Petitioner shot and killed Arthur Bernard Chappell while burglarizing Chappell's house. Petitioner left Chappell's house after killing him, and returned later that night with a "crime partner" and took Chappell's stereo equipment. Petitioner asserts that his shooting of Chappell was an accident caused when Chappell awoke and startled Petitioner. Petitioner asserts that he

---

[1] Petitioner filed this action in the Central District of California. The action was transferred to the Northern District on the grounds that venue was proper here because Petitioner is currently housed in the Northern District in Soledad State Prison. (Docket No. 22.)

1 was not burglarizing the residence, but rather was trying to
2 recover PCP from Chappell, who had failed to pay Petitioner for the
3 drug.  (Ans., Lodgement 3 (Transcript of Parole Hearing) at 11-12.)
4 In 1989, Petitioner, pursuant to a plea agreement, plead guilty to
5 second degree murder, see Cal. Pen. Code § 187.  (Am. Pet. at 2.)
6 The Superior Court of Los Angeles sentenced Petitioner to fifteen
7 years to life in state prison.  (Id.)

8     In September, 2005, the Board found Petitioner unsuitable for
9 parole.  In reaching its decision, the Board reviewed Petitioner's
10 record, including the circumstances of the commitment offense, his
11 criminal and social history, his prison disciplinary record, his
12 psychological report, his participation in self-help, and his
13 parole plans.  The Board found that the offense was carried out in
14 manner that was "especially cruel and callous," and which
15 "demonstrates an exceptional[ly] callous disregard for human
16 suffering."  (Ans., Lodgement 3 at 91.)  The Board also found that
17 the "motive for the crime was very trivial in relation to the
18 offense," in that Chappell was killed over a drug deal.  (Id. at
19 91-92.)

20     The Board expressed great concern over Petitioner's unstable
21 social history and his rather extensive criminal history.  His
22 social history includes his parents' separation when he was
23 thirteen, the shooting death of a brother, and his witnessing the
24 highly traumatic shooting death of a childhood friend when
25 Petitioner was ten or eleven.  (Id. at 20-21 & 25-26.)
26 Petitioner's criminal history, which in addition to nine adult
27 arrests (id. at 35), includes an arrest at the age of fourteen for

28                              2

assault with a deadly weapon, and detention in the California Youth Authority (CYA) for his association in the gang-related killing of man. Petitioner also served time in the CYA for his role in the kidnapping of a gang member. (Id. at 22-24, 30-31.)

The Board reviewed Petitioner's prison disciplinary history and latest psychological report. It noted that Petitioner had three serious disciplinary infractions, the last occurring in 1997, most of which involved a "fight or violence," such as "[r]esisting staff, fighting, [or] [c]ombat." (Id. at 60-61, 62, 97.) Petitioner's latest psychological report, authored in 1998, states that, in light of various factors including his strong family support, Petitioner's "violence potential if released to the community is . . . below average." (Id. at 63-64.) The report noted, however, that if Petitioner were to use drugs again, his violence potential "would be considerably higher." (Id. at 64.) The Board took notice that Petitioner had a "history of anti-social personality disorder." (Id. at 63.)

The Board acknowledged that Petitioner had participated extensively in self-help programs, including Narcotics Anonymous and anger management. (Id. at 59 & 60.) It was also noted that Petitioner had parole plans, which included offers of support from his wife, and working at his uncle's trucking company. (Id. at 56-57 & 65.) The Board also heard from a representative of the Los Angeles District Attorney, who voiced his office's opposition to parole. (Id. at 85.) The Board found Petitioner unsuitable for parole based on the circumstances of his commitment offense, his criminal history, and a need for further participation in self-

3

help.  (Id. at 91-97.)

In response to the Board's decision, Petitioner filed state habeas petitions, later denied, in the California superior, appellate, and supreme courts.  (Pet. at 4-5.)  The Superior Court of Los Angeles issued the last reasoned decision.  That court found that the Board's decision was supported by some evidence, including that the commitment offense was carried out in a dispassionate and calculated manner, and that Petitioner needed additional institutional programming, and had a juvenile criminal history that included murder and an unstable social history.  (Ans., Lodgement 5 (Order of the Los Angeles Superior Court) at 1-2.)

As grounds for federal habeas relief, Petitioner alleges that (1) the Board's decision violated his rights to due process because it was not supported by some evidence and (2) the Board must provide the "reciprocal benefits" promised to Petitioner in his plea agreement.[2]

DISCUSSION

I.  Standard of Review

Because this case involves a federal habeas corpus challenge to a state parole eligibility decision, the applicable standard is contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002).

---

[2] Petitioner has advanced several other claims--that the Board's decision was pro forma, that the Board ignored evidence in favor of a suitability finding and that the Board disregarded the sentencing matrix--which will be addressed under the Court's analysis of the first claim.

4

Under AEDPA, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).  A federal court must presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1).

Where, as here, the highest state court to reach the merits issued a summary opinion which does not explain the rationale of its decision, federal court review under § 2254(d) is of the last state court opinion to reach the merits.  Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000).  In this case, the last state court opinion to address the merits of Petitioner's claim is that of the superior court.

II. Analysis

    A.  Due Process Claim

Petitioner claims that the Board's decision deprived him of his right to due process because it was not based on "some evidence" that Petitioner is not suitable for parole, i.e., that if released, he poses an unreasonable risk of danger to society.  (Am. Pet. at 5.)  Petitioner also contends that the Board's continued reliance on the circumstances of the commitment offense violates due process, that the Board engaged in a pro forma review, ignored the guidelines of the sentencing matrix, and failed to consider

5

evidence of parole suitability. (Id. at 5-6(B).)

The United States Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006) (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)).

When assessing whether a state parole board's suitability determination was supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. Sass, 461 F.3d at 1128. Accordingly, in California, the court must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record to determine whether the state court decision constituted an unreasonable application of the "some evidence" principle. Id.

California law provides that a parole date is to be granted unless it is determined "that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Cal. Pen. Code § 3041(b).

The California Code of Regulations sets out the factors showing suitability or unsuitability for parole that the Board is required to consider. See 15 Cal. Code Regs. tit. 15 § 2402(b). These include "[a]ll relevant, reliable information available,"

6

such as,

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.  Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in finding of unsuitability.

Id.

Circumstances tending to show unsuitability for parole include the nature of the commitment offense and whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner."  Id. at (c).  This includes consideration of the number of victims, whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id.  Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental health problems related to the offense, and serious misconduct in prison or jail.  Id.

Circumstances tending to support a finding of suitability for

7

parole include no juvenile record, a stable social history, signs of remorse, that the crime was committed as a result of significant stress in the prisoner's life, a lack of criminal history, a reduced possibility of recidivism due to the prisoner's present age, that the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release, and that the prisoner's institutional activities indicate an enhanced ability to function within the law upon release. Id. at (d). In a recent decision, the California Supreme Court stated that due process is denied when "an inquiry focuse[s] only upon the existence of unsuitability factors." In re Lawrence, 44 Cal. 4th 1181, 1208 (2008).

Applying these legal principles to the instant matter, the Court concludes that Petitioner has not shown that the Board's decision violated his right to due process. In other words, the Board's decision was supported by "some evidence." First, as to the commitment offense, there is evidence to support the Board's determination that the killing of Chappell was carried out in a manner that was "especially cruel and callous" and that "demonstrates an exceptional[ly] callous disregard for human suffering." (Ans., Lodgement 3 at 91-92.) The record shows that, while armed, Petitioner, displeased that Chappell had not paid him for some drugs, illegally entered Chappell's residence at night while Chappell slept, to reclaim the packet of drugs, and during this burglary shot him to death. These facts indicate that Petitioner intended to retrieve his property by stealth, as shown by his entering at night when Chappell was asleep and unprotected,

8

and that he was prepared to use deadly force, as his use of the gun indicates. The fact that Petitioner was prepared to use force to retrieve drugs also supports the Board's finding that the crime was trivial in relation to the offense.

Second, contrary to Petitioner's assertion that the Board violated due process by its continued reliance solely on the circumstances of the commitment offense (Am. Pet. at 5(A)), the record indicates that the Board relied on other factors, such as Petitioner's criminal and social history, his psychological report, and his prison disciplinary history. Specifically, the Board noted that Petitioner had nine adult arrests and several serious juvenile offenses on his record, and that he had an unstable social history. His psychological report stated that he had an anti-social personality disorder. Also, while in prison, Petitioner committed three serious disciplinary infractions, which included acts of violence. It is true that a parole authority's continued reliance on the circumstances of the commitment offense as the sole basis for denying parole can, over time, raise due process concerns. See Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003). "[I]n some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007). In the instant matter, while the circumstances of the commitment offense may in the future cease to have probative value on the issue of Petitioner's suitability for parole, they are, at present and combined with

9

other factors, "some evidence" to support the Board's decision.

Third, contrary to Petitioner's assertion that the Board merely engaged in a pro forma review of his parole suitability (Am. Pet. at 5), the record indicates that the Board thoroughly examined Petitioner's entire record, took into account the specific circumstances of his social and criminal history, asked relevant questions, and reached a decision after an individualized study of Petitioner's record.

Fourth, Petitioner contends that the Board ignored the guidance provided by California's Sentencing Matrix when reaching its decision. (Am. Pet. at 6(A).) Contrary to Petitioner's assertion, the Board is under no duty to apply the matrix once it has determined that a prisoner is unsuitable for parole. In Re Dannenberg, 34 Cal. 4th 1069, 1071 (2005).

Fifth, Petitioner's assertion that the Board failed to consider factors in favor of a finding of suitability (Am. Pet. at 6) is without merit. The record shows that the Board did consider such parole suitability factors as Petitioner's plans for parole and his participation in self-help programming.

Based on this record, the Court concludes that Petitioner has not shown that the Board's decision violated his right to due process. Because the Board's decision did not violate his constitutional rights, the state court's adjudication of the matter did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts. Accordingly, Petitioner's due process

claims are denied.

B. Plea Agreement Claim

Petitioner claims that the Board violated his plea agreement by failing to give him the "reciprocal benefits" promised to him, that is, the granting of parole. (Am. Pet. at 6(B).)

Plea agreements are contractual in nature and subject to contract law standards of interpretation. In re Ellis, 356 F.3d 1198, 1207 (9th Cir. 2004) (citing United States v. Hyde, 520 U.S. 670, 677-78 (1997)). Thus, a petitioner is entitled to habeas relief if he or she enters into a plea agreement with a state prosecutor, and the prosecutor breaches the agreement. Gunn v. Ignacio, 263 F.3d 965, 969-70 (9th Cir. 2001).

Petitioner's claim is without merit because he has received the reciprocal benefit of his plea agreement, that is, a shorter sentence. Specifically, Petitioner received a sentence of fifteen years to life by pleading to second degree murder, rather than a sentence of life imprisonment without parole or death if he had been convicted at trial. The information had charged Petitioner with first degree murder, Cal. Pen. Code § 187, while in the commission of a robbery, first and second degree burglary, id. §§ 460 and 190.2(a)(17), and a firearm enhancement, id. § 12022.5. (Ans., Lodgement 2 at 1.) Petitioner has received the benefit of his agreement, and has admitted as much. In his plea agreement, Petitioner indicated that he was pleading guilty "to take advantage of a plea bargain." (Ans., Lodgement 10 at 2.)

Petitioner's sentence allows for the possibility of parole, provided that he meets the requirements for a finding of parole

11

suitability.  As discussed above, the Court finds that the Board's decision that Petitioner did not meet the requirements for a finding of parole suitability is supported by some evidence.  On this record, Petitioner has not shown that the Board's denial of parole is a breach of his plea agreement.

Petitioner's claim is denied.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

Petitioner's motion to submit a letter brief (Docket No. 28) is GRANTED.  The Court deems the letter brief as properly filed.  This order terminates Docket No. 28.

The Clerk of the Court shall terminate all pending motions, enter judgment and close the file.  Each party shall bear his own costs.

IT IS SO ORDERED.

Dated: 9/30/09

CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DARRYL RANSOM,

    Plaintiff,

v.

BEN CURRY et al,

    Defendant.

Case Number: CV08-03571 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 30, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Darryl Ransom CDC E-40704
Correctional Training Facility-Central
FW-315-Low
P O Box 689
Soledad, CA 93960-0689

Dated: September 30, 2009

    Richard W. Wieking, Clerk
    By: Sheilah Cahill, Deputy Clerk

13